[Civ. No. 1745. Fifth Dist. Feb. 15, 1973.]

HORACE KELSEY et al., Plaintiffs and Appellants, v.
HAL F. COLWELL, as County Planning Director, etc., et al.,
Defendants and Respondents.

## COUNSEL

Baker, Ancel & Redmond, Mark G. Ancel and Silveira, Garrett, Goul & Curry for Plaintiffs and Appellants.

Russell M. Koch, County Counsel, for Defendants and Respondents.

## OPINION

**GARGANO, J.**—Appellants who are owners of agricultural lands in Merced County brought this action in the court below to compel the respondent board of supervisors to implement the California Land Conservation Act of

1965 in Merced County. Appellants took the position that the act imposed a mandatory duty upon each city and county having a general plan to implement its provisions. It was also appellants' position that the respondent board had taken certain preliminary steps which irrevocably committed the board to implement the act in Merced County.

After a court hearing appellants' petition was denied; the judge determined that the act was permissive, not mandatory, and that the Merced Board of Supervisors was not committed irrevocably to implement the act in that county. The judge, then, volunteered: ". . . by reason of the discretion given to each county as to whether or not it will adopt the Williamson Act within such county, the Williamson Act clearly violates the equal-protection clause of the Fourteenth Amendment to the United States Constitution in that it places farmers competing in the open market in an unfair economic position, depending upon whether the county in which their particular property was located was offering and utilizing the benefits and burdens of the Williamson Act."

Appellants have appealed; they ignore the constitutional question and raise the same two issues argued in the court below.

The California Land Conservation Act of 1965, also known as the Williamson Act, is set forth in chapter 7, title 5, commencing with section 51200 of the Government Code.[1] Briefly, the act is implemented by a city or county through the establishment of agricultural preserves consisting of agricultural and other vacant lands, and the execution of long term contracts with land owners who are willing to restrict the land uses of their property to agricultural and similar endeavors; thereafter, the lands must be assessed for city or county tax purposes according to the restricted land use, not necessarily the highest and best use. (Cal. Const., art. XXVIII; Rev. & Tax. Code, § 402.1.) The pertinent sections of the Government Code are sections 51230 and 51240.

Section 51230 provides: *"Beginning January 1, 1971, any county or city having a general plan,* and until December 31, 1970, any county or city, by resolution, and after a public hearing *may establish* an agricultural preserve. Notice of the hearing shall be published pursuant to Section 6061 of this code, and shall include a legal description, or the assessor's parcel number, of the land which is proposed to be included within the preserve. *Such preserves shall be established for the purpose of defining the boundaries of those areas within which the city or county will be willing* to enter into contracts pursuant to this act. An agricultural preserve shall consist of no

---

[1]Hereafter, references to code sections are directed to the California Government Code unless otherwise indicated.

less than 100 acres; provided, that in order to meet this requirement two or more parcels may be combined if they are contiguous or if they are in common ownership.

"A county or city may establish agricultural preserves of less than 100 acres if it finds that smaller preserves are necessary due to the unique characteristics of the agricultural enterprises in the area and *that the establishment of preserves of less than 100 acres is consistent with the general plan of the county or city.*

"An agricultural preserve may contain land other than agricultural land, but the use of any land within the preserve and not under contract shall within two years of the effective date of any contract on land within the preserve be restricted by zoning or other suitable means in such a way as not to be incompatible with the agricultural use of the land, the use of which is limited by contract in accordance with this chapter.

"Failure on the part of the board or council to restrict the use of land within a preserve but not subject to contract shall not be sufficient reason to cancel or otherwise invalidate a contract." (Italics added.)

Section 51240 provides: "Any city or county may by contract limit the use of agricultural land for the purpose of preserving such land pursuant and subject to the conditions set forth in the contract and in this chapter. A contract may provide for restrictions, terms, and conditions, including payments and fees, more restrictive than or in addition to those required by this chapter."

Ordinary doctrines of statutory construction compel the conclusion that the term "may" was used in sections 51230 and 51240 in its permissive sense. (Gov. Code, §§ 5, 14; *Santa Cruz R.P. Co.* v. *Heaton,* 105 Cal. 162 [38 P. 693]; *Hofacker* v. *Board of Supervisors,* 264 Cal.App.2d 290, 292-293 [70 Cal.Rptr. 374].) Section 51230 not only states that cities and counties *may* establish agricultural preserves, but the section also states that "such preserves shall be established for the purpose of defining the boundaries of those areas within which the city or county *will be willing* to enter into contracts pursuant to this act." And, while section 51240 provides that "any city or county *may* by contract limit the use of agricultural land," the succeeding section directs that "[i]f such a contract is made with any landowner, the city or county *shall* offer such a contract under similar terms to every other owner of agricultural land within the agricultural preserve in question." (§ 51241.)

Appellants' contention that the Williamson Act requires counties and cities to establish agricultural preserves is also refuted by legislative history. In 1970, and 1971, proposals were presented to the Legislature to amend

the act, changing, among other things, sections 51230 and 51240. in order to substitute the word "shall" for the word "may" in each section. On both occasions the legislative counsel reported that if the amendments were adopted, counties and cities authorized to implement the act would be required to establish agricultural preserves and to enter into contracts with landowners unless specific findings were made to the contrary; thereafter, the Legislature rejected the proposed amendments.

The thrust of appellants' argument is that the California Land Conservation Act of 1965 was adopted to subserve a statewide purpose and when this statewide purpose is considered in conjunction with the open space amendment to the California Constitution, the act must be given a mandatory construction despite its permissive language and legislative history. The open space amendment (Cal. Const., art. XXVIII, § 2) provides: "Notwithstanding any other provision of this constitution, the Legislature may by law define open space lands and provide that when such lands are subject to enforceable restriction, as specified by the Legislature, to the use thereof solely for recreation, for the enjoyment of scenic beauty, for the use of natural resources, or for production of food or fiber, such lands shall be valued for assessment purposes on such basis as the Legislature shall determine to be consistent with such restriction and use. All assessors shall assess such open space lands on the basis only of such restriction and use, and in the assessment thereof shall consider no factors other than those specified by the Legislature under the authorization of this section."

■ The Williamson Act embraces statewide purposes; it was adopted by the Legislature to preserve open spaces, to conserve irreplaceable agricultural lands and to eliminate socio-economic problems associated with urban sprawl. (§ 51220.) Nevertheless, the state aims envisioned by the law, by necessity, must be correlated with local environmental and community needs. And, by implication, the state objectives must be correlated with long-range community planning; beginning January 1, 1971, only counties and cities having a general plan may establish agricultural preserves.

The Williamson Act is geared to attain its salutary objectives through a tax program which could affect tax revenues of some cities and counties of this state; as we have seen, lands covered by long-term contracts restricting the land to agricultural and similar uses are assessed according to the restricted use. Consequently, the decision as to whether agricultural preserves should be established in a particular county or city is not only dependent upon local topographical conditions, community needs and long-range community planning but it is also dependent upon the effect the creation of such preserves would have upon the stability of the economy of that city or

county. It is undoubtedly for these reasons that the Legislature delegated to local governments, rather than to a statewide agency, the authority to implement the act's provisions within their territorial jurisdictions and in doing so used discretionary language. ■ The open space law is permissive, not mandatory, legislation.

■ Article XXVIII of the California Constitution is not helpful to appellants' position. The open space amendment was not adopted to require counties and cities to establish agricultural preserves, nor to curtail the legislative prerogative to enact appropriate legislation in this area of the law. Article XXVIII was adopted to uphold the legislative scheme by eliminating the tax controversy which came into existence after the plan became effective; the amendment reconciled assessments based on restricted agricultural and similar land uses with preexisting constitutional requirements that property be assessed at its full cash value. (Cal. Const., art. XI, § 12.)

■ Appellants' second contention that the respondent board of supervisors is irrevocably committed to implement the Williamson Act in Merced County is untenable. The board directed certain county officers and departments to make studies and to prepare forms and procedures, but it did not approve the studies or adopt the forms and procedures; neither did it call a public hearing as required by section 51230. The board's action did not progress beyond the investigative stage. It is firmly settled that mandamus does not lie to compel a public body to perform a discretionary function. (*McGinnis* v. *Mayor and Common Council,* 153 Cal. 711 [96 P. 367]; *Hilton* v. *Board of Supervisors,* 7 Cal.App.3d 708, 713 [86 Cal.Rptr. 754]; 32 Cal.Jur.2d, Mandamus, § 32, pp. 193-196.)

As to the constitutional question, we observe that the trial judge declared the Williamson Act unconstitutional without any evidence as to the extent of the discrimination or without the benefit of a thorough study to determine whether the discrimination, if substantial, is justified by the greater and more compelling public interest; this question was neither raised nor briefed in the court below or on appeal and both parties have stipulated that they did not and do not now challenge the constitutionality of the act. While the implementation of the open space law by counties and cities may result in placing farmers in some areas, not all, in a more advantageous economic position than others, the same criticism can be made of optional building, electrical, zoning, licensing and sales tax laws which may place competing business enterprises in different economic positions. To declare these laws unconstitutional merely because some discrimination may result from their enactment, without evidence as to the extent of the discrimination and without a thorough study to determine whether the discrimination, if substantial, is justified by the greater and more compelling public interest could prove

chaotic. The Williamson Act was adopted by the Legislature to preserve California's beauty, to conserve the state's natural resources and to combat urban sprawl and is of great importance to the welfare of the people. Because it is patent that the trial judge gave a crucial legislative enactment superficial treatment and, because his constitutional conclusion was not necessary to his decision, we do not reach that issue.

The judgment denying appellants' petition for a writ of mandate is affirmed.

Brown (G. A.), P. J., and Franson, J., concurred.

A petition for a rehearing was denied March 12, 1973, and appellants' petition for a hearing by the Supreme Court was denied April 25, 1973.