[Civ. No. 22454. Third Dist. Sept. 28, 1983.]

ROBERT SHELLENBERGER, as Assessor, etc.,
Plaintiff and Appellant, v.
BOARD OF EQUALIZATION OF SAN JOAQUIN COUNTY,
Defendant and Respondent;
HOLT BROTHERS et al., Real Parties in Interest and Respondents.

COUNSEL

Gerald A. Sherwin, County Counsel, and George H. Cunningham, Deputy County Counsel, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

John W. Stovall, James A. Askew and Neumiller & Beardslee for Real Parties in Interest and Respondents.

OPINION

EVANS, J.—The Assessor of the County of San Joaquin, Robert Shellenberger (County), appeals from the judgment denying a petition for writ of mandate. The issue presented is whether real property which had been enforceably restricted pursuant to Williamson Act contracts (Gov. Code, § 51200 et seq.)[1] in 1975, which contracts were terminated in 1977, could be reassessed for property tax purposes in 1978 under the "rollback" provision of article XIII A of the California Constitution to reflect fair market value. The trial court answered the question negatively, sustaining a decision by the county board of equalization (Board) to grant a property tax refund to real parties Holt Brothers.

We are concerned with land conservation contracts entered into in 1974 by the Holt Brothers and the County of San Joaquin, covering four parcels of land (approximately 120 acres) north of the Stockton city limits. In accordance with the Williamson Act the contracts provided that Holt Brothers would restrict their land to agricultural or related use for at least 10 years (Gov. Code, §§ 51240, 51242, 51244) in return for a use-value assessment for property taxes. However, in 1977 the City of Stockton annexed the property, exercised its statutory right not to succeed to the contracts, and rezoned the property for residential use. (Gov. Code, §§ 51243, 51243.5.) At this time, the property was no longer entitled to a preferential tax assessment.

In determining the value of the Holt Brothers' now unrestricted property for the 1978-1979 taxable year, the assessor disregarded the 1975-1976 full cash value as reflected on the secured tax roll (a use-value assessment) and reassessed the land at its 1975 fair market value without consideration of

---

[1] The California Land Conservation Act of 1965 has been known as the Williamson Act since the 1967 amendment.

its restricted status under the Williamson Act contract. This determination by the assessor resulted in a substantial increase in the assessment of the property, causing the Holt Brothers to file an application with the county board of equalization for changed assessments, beginning with the 1979-1980 tax year. Holt Brothers contended the parcels should have been assessed according to the full cash value figure reflected on the 1975-1976 secured tax roll (then assessed pursuant to the Williamson Act contract in force) under the "rollback" provision contained in article XIII A. The Board found for Holt Brothers, and after the trial court denied the County's writ of mandamus (Code Civ. Proc., § 1094.5), this appeal followed. We reverse.

I

Unless otherwise provided by the state Constitution or federal law, all property in California is taxable "in proportion to its full value." (Cal. Const., art. XIII, § 1; former art. XIII, § 37; Rev. & Tax. Code, § 201.)[2] Prior to 1966, "full value" was defined as "fair market value" (former art. XIII, § 1; *De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546 [290 P.2d 544]), which in practice meant that the assessor "was compelled to consider the highest and best use to which the property was naturally adapted, and could not limit his consideration only to the use to which the land was presently put. [Citation.]" (*Dorcich* v. *Johnson* (1980) 110 Cal.App.3d 487, 492 [167 Cal.Rptr. 897].) One undesirable effect of that method of property taxation was that it frequently resulted in the conversion of agricultural land located on the metropolitan fringe to uses for which it was valued by the market, such as residential and commercial development. (*Sierra Club* v. *City of Hayward* (1981) 28 Cal.3d 840, 850 [171 Cal.Rptr. 619, 623 P.2d 180].)

In an effort to preserve agricultural land and discourage its unnecessary and premature conversion, the Legislature in 1965 enacted the Williamson Act. (Gov. Code, § 51200 et seq.) Under the act, cities and counties are authorized to enter into annually renewable contracts with owners of open space land. By such contracts, the landowner agrees to restrict his property to open space, agricultural or related uses for at least 10 years; in return, the local government agrees to reduce the assessed valuation of that land to reflect such restricted use through assessed value. (Gov. Code, §§ 51230, 51240, 51242, 51244.) Because the agricultural use value of land in California is typically lower than market value, the landowner can reduce property taxes by temporarily forfeiting development rights. (*Sierra Club* v. *City*

---

[2]Unless otherwise indicated, all constitutional references are to the California Constitution and all statutory references are to the Revenue and Taxation Code.

*of Hayward, supra,* 28 Cal.3d at p. 851.) All doubts about the constitutionality of this use-value taxation scheme were removed when the Constitution was amended in 1966 to include what is now article XIII, section 8, which states in part that "To promote the conservation, preservation and continued existence of open space lands, the Legislature may define open space land and shall provide that when this land is enforceably restricted, in a manner specified by the Legislature, to recreation, enjoyment of scenic beauty, use or conservation of natural resources, or production of food or fiber, it shall be valued for property tax purposes only on a basis that is consistent with its restrictions and uses."

The enactment of article XIII, section 8, insured the goal of changing some of the effects of the property tax system by constitutional direction, and enabled the Legislature to supersede the full value requirement found in article XIII, section 1, and former article XIII, section 37. Beginning in 1966 implementing legislation was passed governing Williamson Act property which specifically forbade use of the assessment standard—fair market value—that had contributed to the numerous land use property tax problems. (§§ 421-423.)

With the passage of article XIII A (popularly known as Prop. 13) in 1978 (eff. July 1, 1978), the electorate significantly altered the previous system of real property taxation in this state. (See *Board of Supervisors* v. *Lonergan* (1980) 27 Cal.3d 855, 857 [167 Cal.Rptr. 820, 616 P.2d 802].) Property is still to be assessed at "full value" (art. XIII, § 1), but that term is no longer synonymous with fair market value. Under article XIII A, section 2, subdivision (a), commonly referred to as the valuation "rollback" provision, full value now means "the county assessor's valuation of real property as shown on the 1975-76 tax bill under 'full cash value' or, thereafter, the appraised value of real property when purchased, newly constructed, or a change in ownership has occurred after the 1975 assessment. . . ." This change was consistent with article XIII, section 1, adopted in 1974, which provides that "The value to which the percentage is applied, whether it be the fair market value or not, shall be known for property tax purposes as the full value."

II

Section 2, subdivision (a), of article XIII A imposes a limitation on property values by "rolling back" assessments to the full cash value figure reflected on the 1975-1976 secured tax roll. But use of the 1975-1976 full cash value figure for the Holt Brothers' property, which has been free from enforceable restrictions since 1977, has brought about a situation where the County remains indefinitely bound by a use-value assessment for tax pur-

poses while it is simultaneously deprived of the benefits of open space land, the bargained for consideration of the contracts; Holt Brothers on the other hand receive a substantial tax windfall that must ultimately be borne by their fellow citizens, based on an assessment to which they legally ceased to be entitled in 1977. Obviously, neither the drafters of article XIII A nor the parties to the Williamson Act contracts here could have contemplated this result. Indeed, the Holt Brothers, as taxpayers, creditably do not contend that article XIII A was intended to embrace the kind of serendipitous tax relief they have received. Rather, they argue simply that the language of article XIII A, section 2, subdivision (a), requiring use of full cash value as reflected on the 1975-1976 secured tax role must be literally and strictly applied, come what may. Rules of construction and principles of equity compel us to reach a different conclusion.[3]

By its terms article XIII A treats equally all those property owners who acquired property before March 1, 1975. Their taxes for the 1978-1979 tax year were to be determined according to the full cash value figure reflected on the 1975-1976 secured tax roll; presumably the full cash value figure would reflect fair market value, since that was the standard then in effect; however, if it did not, section 2, subdivision (a), of article XIII A expressly provided in pertinent part that "All real property not already assessed up to the 1975-76 full cash value may be reassessed to reflect that valuation."

Holt Brothers maintain that the reassessment provision is inapplicable here because "full cash value" is statutorily defined as either the fair market value or the restricted value of property. (§§ 110, 110.5, 405.5.) However, we think it may be fairly implied that the drafters could not have intended to foreclose reassessment under the facts presented here. Although the initiative was anticipated to bring about some disparity in tax treatment (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978)

---

[3]As an initial matter, we reject Holt Brothers' claim that the County is precluded from attacking the Board's decision under section 80, which provides in part that "(a) An application for reduction in the base year value of an assessment on the current local roll may be filed during the regular filing period for that year as set forth in Section 1603 or Section 1840, subject to the following limitations: . . . [¶] (2) The base year value determined pursuant to paragraph (1) of subdivision (a) of Section 110.1 shall be conclusively presumed to be the base year value unless an equalization application is filed no later than the regular filing period following the 1980 lien date. Once an application is filed, the base year value determined pursuant to that application shall be conclusively presumed to be the base year value for such assessment." This section was obviously intended to preclude a reweighing of the facts underlying a fair market value determination of property, and not the legal issue of whether the proper standard of valuation has been used. Moreover, section 110.1, subdivision (a)(1), provides that for purposes of article XIII A, full cash value means *fair market value for the "1975 lien date."* (Italics added.) By its terms this section is inapplicable, since the Board's determination of full cash value was based on a use-value assessment on the 1975 lien date, made applicable to article XIII A by subdivision (d) of section 110.1.

22 Cal.3d 208, 232-236 [149 Cal.Rptr. 239, 583 P.2d 1281]), there is nothing in the background of Proposition 13 either pro or con which suggests that such disparity was intended to result from artificially depressed assessments pursuant to Williamson Act contracts no longer in existence.

The Holt Brothers' argument ignores the obvious purpose of the reassessment provision, which was to promote equality and fairness among those whose property assessments were based on the 1975-1976 full cash value figure: if reassessment here is precluded, not only will the Holt Brothers receive more favorable tax treatment than "similarly situated" persons who held agricultural land purchased prior to March 1, 1975, they will also receive more favorable treatment than landowners who gave notice of nonrenewal of Williamson Act contracts after June 6, 1978, *but whose property remains restricted and subject to yearly incremental valuation increases pursuant to section 426.*[4] Such an anomalous and unintended result is contrary to the well-established rule that constitutional and statutory provisions must be construed so as to avoid absurd results and to give effect to the manifest purposes of the legislation. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization, supra,* 22 Cal.3d at p. 245; *State of South Dakota v. Brown* (1978) 20 Cal.3d 765, 777 [144 Cal.Rptr. 758, 576 P.2d 473]; *Bakkenson v. Superior Court* (1925) 197 Cal. 504, 511 [241 P. 874].)

■ "The government's decision to enter [into a Williamson Act] agreement is a conclusion to bestow tax benefits on the landowner in return for the achievement of a specific goal—preservation of open space land. In making that decision, normally the only concern is whether the government will achieve the declared purposes in return for the revenues it will forego." (*Sierra Club v. City of Hayward, supra,* 28 Cal.3d at p. 857.) ■ To continue those tax benefits by mechanically applying article XIII A's rollback provision here would not only strip the County of the benefit of its bargain but violate the essence of article XIII, section 8. That section requires in part that "*[W]hen this land is enforceably restricted, . . . it shall be valued for property tax purposes only on a basis that is consistent with its restrictions and uses.*" (Italics added.) It is a fundamental rule of construction that constitutional amendments must, if at all possible, be interpreted in harmony with other relevant portions of the Constitution so as to avoid a conflict. (*Board of Supervisors v. Lonergan, supra,* 27 Cal.3d at p. 866; *State Bd. of Equalization v. Board of Supervisors* (1980) 105 Cal.App.3d 813, 822 [164 Cal.Rptr. 739].) As article XIII A "did not repeal or in any way alter" the 33 sections contained in article XIII (*State*

---

[4]Section 426 provides in substance that following notice of nonrenewal, the assessed value of the property is generally increased until the property's full cash value reaches the property's true market value at the time the contract eventually expires.

*Bd. of Equalization* v. *Board of Supervisors, supra,* 105 Cal.App.3d at p. 822), we conclude the county assessor could properly reassess the Holt Brothers' property under a fair market value standard pursuant to section 2, subdivision (a), of article XIII A.

The judgment is reversed, and the cause remanded to the superior court, with directions to issue a peremptory writ of mandate (1) vacating the county board of equalization decision granting Holt Brothers a refund, and (2) reinstating the fair market value assessment as of March 1, 1975, for each of the parcels as previously determined by the county assessor.

Regan, Acting P. J., and Sims, J., concurred.

The petition of real parties in interest and respondents for a hearing by the Supreme Court was denied November 23, 1983.