[No. H000161. Sixth Dist. Apr. 3, 1986.]

ANDREW DELUCCHI et al., Plaintiffs and Appellants, v.
COUNTY OF SANTA CRUZ et al., Defendants and Appellants.

## COUNSEL

Dennis J. Kehoe and Adams, Levin, Kehoe, Bosso, Sachs & Bates for Plaintiffs and Appellants.

Thomas F. Olson and Jennifer Mellett von Nosler for Amici Curiae on behalf of Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, N. Gregory Taylor, Assistant Attorney General, Joseph Barbieri, Deputy Attorney General, and Dwight L. Herr, County Counsel, for Defendants and Appellants.

## OPINION

O'FARRELL, J.*—Plaintiffs Andrew and Dorothy Delucchi are the owners of approximately 163 acres of land in the coastal zone bordering the residential community of La Selva Beach in Santa Cruz County. On February 23, 1971, plaintiffs and the County of Santa Cruz (County) entered into a contract pursuant to the Land Conservation Act of 1965, also known as the Williamson Act (Gov. Code, §§ 51200-51295) wherein it was agreed that the above-noted property would be restricted to agricultural and compatible uses. Thereafter, County placed the subject property into an "agricultural preserve" (A-P) zone. The A-P zone in effect at the time the contract was executed authorized a single-family dwelling for each 10 acres of total site area as a *permitted*, i.e., nondiscretionary, use. Except for certain specified conditional uses, all agricultural uses, including "accessory buildings," were similarly designated as permitted uses for which it was not necessary to obtain a discretionary permit from the County. Greenhouses were not specified as conditional uses.

On November 7, 1972, the California Coastal Act (now codified in Pub. Resources Code, § 30000 et seq.) was adopted by voter initiative.[1] Pursuant

---

*Assigned by the Chairperson of the Judicial Council.

[1]For a more thorough discussion of California coastal legislation, see *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158, 162-163 [188 Cal.Rptr. 104, 655 P.2d 306].

to the mandates of the Coastal Act, as revised by the state Legislature, County was required to adopt a local coastal program (LCP) which conformed to the policies of the Coastal Act. (Pub. Resources Code, §§ 30500-30525.) In 1982, as part of the implementation of its LCP, County adopted new zoning ordinances, including a revised A-P zone applicable to the subject property. Under this revised A-P zone, a discretionary permit, including coastal permit approval, is required for the construction of dwelling units (one single-family unit per 40 acres), greenhouses and other agricultural structures.

In 1982, plaintiffs commenced the underlying actions[2] against County and the California Coastal Commission (Commission) alleging, inter alia, that the adoption of the revised A-P zone constituted a breach of their Williamson Act contract and violated a number of their rights under the United States Constitution, including the contract and due process clauses, and also violated the federal Civil Rights Act (42 U.S.C. § 1983). They sought specific performance, damages and attorney's fees.

At trial, plaintiffs sought to establish the following through extrinsic evidence: that they had been induced to enter the Williamson Act contract by promises of County officials that the text of the A-P zone, including the designation of permitted and conditional uses, would remain the same throughout the term of the contract; that plaintiffs would not have entered into the contract had they thought that the County could unilaterally change the text of the A-P zone ordinance; that the alleged guarantee of land uses, as designated in the original A-P zone, was a part of their contract; and that the primary reason for plaintiffs' execution of the contract was to guarantee these land uses for the life of the contract. Evidence supporting these allegations consisted of plaintiff Andrew Delucchi's testimony concerning oral representations made prior to the execution of the contract by the tax assessor and the planning director, to the effect that the contract would freeze the zoning.

According to Delucchi, plaintiffs intended to construct family dwellings for themselves and their two adult daughters and to engage in various agricultural land uses. In fact, at time of trial plaintiffs had already completed the construction of two single-family dwellings on the property, one for each of their daughters and their respective families. These homes were built in 1980 and 1982 after plaintiffs applied for and were granted discretionary permits from the Commission.

Following a two-day trial, the court below found the written contract was ambiguous concerning the question of whether or not the original A-P zone

---

[2]Action No. 82382 against the County and action No. 83506 against the County and the Commission were consolidated for all purposes.

was to remain in effect throughout the term of the contract. Resolving this ambiguity against the County, the trial court concluded that the contract did contain a promise not to alter the original A-P zone. Accordingly, the trial court ruled plaintiffs were entitled to specific performance and enjoined the County and the Commission from altering, interfering with, or otherwise modifying the contract at issue, including the A-P district regulations and text in effect on the date of the execution of the contract. Notwithstanding its decision concerning the interpretation of the terms of the contract, the trial court also determined that plaintiffs were still subject to the permit requirements of the Coastal Act and must apply for a discretionary permit from the Commission for the construction of any additional dwellings on the property. Regarding the construction of greenhouses, however, the trial court held that the Coastal Act does not apply to such structures. Finally, the trial court ruled that the case constituted a private action which did not "rise to the dignity of a Civil Rights Act violation," and therefore ordered each party to bear their own attorney fees.

All parties have appealed. Appellants, the County and Commission, contend that the trial court erred in ruling that greenhouses do not constitute a "development" under the Coastal Act. They further contend that the Williamson Act contract did not freeze the original A-P zone or, if it did, that such a provision would be invalid as an unlawful delegation of its zoning authority pursuant to the police power. Plaintiffs/cross-appellants urge a reversal of that part of the trial court's judgment requiring a discretionary permit for additional dwellings. They also seek a reversal of that portion of the judgment denying their various claims under the Civil Rights Act[3] and contend that they are entitled to attorney's fees on both the trial and appellate levels pursuant to section 1988.[4]

### Discussion

In 1965, our state Legislature enacted the Williamson Act in an endeavor to preserve agricultural land and discourage the premature and unnecessary conversion of such land to urban uses. (Gov. Code, § 51200 et seq.) Under

---

[3] 42 United States Code section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

[4] Section 1988, in pertinent part, states: "In any action or proceeding to enforce a provision of section . . . 1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as a part of the costs."

the act local governments are authorized to establish agricultural preserves (Gov. Code, § 51230) wherein land uses are limited to agricultural and compatible uses. (Gov. Code, § 51243.) The act further empowers the government entity to enter into annually renewable contracts restricting land use for a minimum term of ten years. (Gov. Code, §§ 51240, 51242, 51244.) In return for agreeing to restrict the use of his land in accordance with the act, the landowner receives a reduced property tax assessment based on the value of the land for its current use as opposed to its market value. (Cal. Const., art. XIII, § 8, formerly art. XXVIII[5]; *Sierra Club* v. *City of Hayward* (1981) 28 Cal.3d 840, 851 [171 Cal.Rptr. 619, 623 P.2d 180]; *Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1131 [203 Cal.Rptr. 886]; *Shellenberger* v. *Board of Equalization* (1983) 147 Cal.App.3d 510, 513 [195 Cal.Rptr. 168]; *Kelsey* v. *Colwell* (1973) 30 Cal.App.3d 590, 592 [106 Cal.Rptr. 420].) The landowner may terminate the contract by serving notice upon the local government, but is proscribed from developing the land during the balance of the contract term. (Gov. Code, § 51246.) Upon notice of nonrenewal, taxes on the property gradually return to tax levels for nonrestricted property. (Rev. & Tax Code, § 426.)

I.

*The Contract Cannot Reasonably Be Interpreted as a Promise by the County That the Existing Zoning Would Not Be Changed.*

The applicable principles of appellate review concerning the interpretation of written agreements are well settled. ■ "[I]t is a 'judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.' The possibility that conflicting inferences can be drawn from uncontroverted evidence does not relieve the appellate court of its duty independently to interpret the instrument; it is only when the

[5]At the time the contract herein was executed, article XXVIII provided: "Section 1. The people hereby declare that it is in the best interest of the state to maintain, preserve, conserve and otherwise continue in existence open space lands for the production of food and fiber and to assure the use and enjoyment of natural resources and scenic beauty for the economic and social well-being of the state and its citizens. The people further declare that assessment practices must be so designed as to permit the continued availability of open space lands for these purposes, and it is the intent of this article to so provide. [¶] Sec. 2. Notwithstanding any other provision of this constitution, the Legislature may by law define open space lands and provide that when such lands are subject to enforceable restriction, as specified by the Legislature, to the use thereof solely for recreation, for the enjoyment of scenic beauty, for the use of natural resources, or for production of food or fiber, such lands shall be valued for assessment purposes on such basis as the Legislature shall determine to be consistent with such restriction and use. All assessors shall assess such open space lands on the basis only of such restriction and use, and in the assessment thereof shall consider no factors other than those specified by the Legislature under the authorization of this section. [New article adopted November 8, 1966.]"

issue turns upon the credibility of extrinsic evidence, or requires a resolution of a conflict in that evidence, that the trial court determination is binding. [Citation.]" *Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385]; accord *Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges A.G.* (1970) 3 Cal.3d 434, 445 [91 Cal.Rptr. 6, 476 P.2d 406]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Blumenfeld* v. *R.H. Macy & Co.* (1979) 92 Cal.App.3d 38, 44 [154 Cal.Rptr. 652].)

■ " ' 'The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.' [Citations.]" (*Garcia* v. *Truck Ins. Exchange* (1984) 36 Cal.3d 426, 435 [204 Cal.Rptr. 435, 682 P.2d 1100], quoting *Pacific Gas & E. Co.* v. *G.W. Thomas Drayage Etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]; accord *Blumenfeld* v. *R.H. Macy & Co., supra,* 92 Cal.App.3d 38, 45.)

In order to make this determination, the trial court should provisionally consider all credible evidence concerning the intention of the parties so that the court can place itself in the same situation in which the parties found themselves at the time they entered the agreement. (*Pacific Gas & E. Co., supra,* 69 Cal.2d 33, 39-40.) If, after considering this evidence, the trial court determines that the contract is reasonably susceptible to the offered interpretation, then the court may admit the extrinsic evidence to interpret the contract. However, if the contract is not reasonably susceptible to the offered interpretation, the evidence is irrelevant and inadmissible to interpret the contract. (*Blumenfeld, supra,* 92 Cal.App.3d 38, 45.)

In the case at bar, the extrinsic evidence is not in conflict. ■ Since the interpretation of the agreement does not turn on the credibility of extrinsic evidence, it is this court's duty to independently interpret the contract and determine whether the evidence offered by plaintiffs is relevant to prove a meaning to which the language of the agreement is reasonably susceptible.

At the outset, we observe that clause 3 of the agreement contains the only language which could conceivably support the interpretation offered by plaintiffs.[6] It reads, in pertinent part, as follows: "County agrees not to

---

[6]"In consideration of the execution hereof by Owner and the execution of similar contracts by other property owners within the same agricultural preserve, County agrees not to authorize any uses, other than those permitted by the County Zoning Ordinance in the Agricultural Preserve (A-P) Zone, during the term of this contract or any renewal thereof. Nothing herein shall prohibit a change of boundaries of said Agricultural Preserve to omit lands not subject to a contract or to include additional lands."

authorize any uses, other than those permitted by the County Zoning Ordinance in the Agricultural Preserve (A-P) Zone, during the term of this contract . . . ."

Aware, however, of the well established rule that "[t]he whole of a contract is to be taken together, so as to give effect to every part" (Civ. Code, § 1641), we proceed to examine those other portions of the contract here relevant.

The "Whereas" clause on page one of the agreement,[7] in accordance with the objectives of the Williamson Act, announces the desire of the parties to limit the use of the subject property to "agricultural uses and those compatible uses allowed" in the A-P zone.

Clause 2 of the contract,[8] again in accordance with the codified objectives of the Act, also speaks to the uses to which the land shall be restricted during the term of the contract: "the . . . land shall be used for the commercial production of agricultural commodities and/or those compatible uses allowed" in the A-P zone.

In clause 4, the *owner* "agrees to restrict his property to those uses authorized" in the A-P zone.

Clause 8 recites the consideration: for County, the substantial public benefit [in preserving open space land]; for plaintiffs, "the advantage which will accrue to Owner in the event of any reduction in the assessed value of said property due to the *imposition* of the limitations on its use contained herein." (Italics added.)

---

[7]"WHEREAS, Owner is the owner of certain real property in the County of Santa Cruz, which property is presently devoted to agricultural use and is described in Exhibit 'A' attached hereto; and

"WHEREAS, said property is located in an agricultural preserve heretofore established by County; and

"WHEREAS, both Owner and County desire to limit the use of said property to agricultural uses and those compatible uses allowed in the Agricultural Preserve (A-P) Zone, in order to discourage premature and unnecessary conversion of such land to urban use, recognizing that such land has substantial public value as open space and that the preservation of such land in agricultural production constitutes an important physical, social, esthetic, and economic asset to County, and

"WHEREAS, the parties have determined that the highest and best use of such land during the life of this contract, or any renewal thereof, is for agricultural purposes . . . ."

[8]"During the term of this contract the above-described land shall be used for the commercial production of agricultural commodities and/or those compatible uses allowed in the Agricultural Preserve (A-P) Zone of the County Zoning Ordinance. No structures shall be erected upon said land except such structures as may be incidental to and compatible with such uses."

Importantly, except for clause 3, the contract speaks in terms of use restrictions either imposed by the County or agreed to by plaintiff landowners. Only in clause 3 is there any language which purports to bind the County, and this language, once again, refers to *uses,* not to the right of the County to *regulate* those uses. Moreover, it is clear from the record that though the revised A-P zone regulates the uses of the subject property in a more restricted manner than did the original A-P zone, those uses are still the same: agricultural and compatible uses. Nowhere in the contract is there any language purporting to limit the County's power to prescribe which uses shall be permitted as a matter of right and which uses allowed on a discretionary or conditional basis. Neither is there any language purporting to prohibit the County from regulating those uses accordingly. The language in clause 3 merely recites County's obligation under the Williamson Act (Gov. Code, §§ 51242, 51243) to preclude more intensive uses of the property. No one argues that the County has not fulfilled this obligation.

We next turn to public policy considerations raised by plaintiffs' preferred interpretation. ■ Land use regulations, including the power to zone, involve the exercise of the sovereign's police power. (*Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785, 800 [132 Cal.Rptr. 386, 553 P.2d 546]; *Carty* v. *City of Ojai* (1978) 77 Cal.App.3d 329, 342 [143 Cal.Rptr. 506]; *Scrutton* v. *County of Sacramento* (1969) 275 Cal.App.2d 412, 419 [79 Cal.Rptr. 872].) A government "may not contract away its right to exercise the police power in the future. [Citations.]" (*Avco, supra,* at p. 800; accord *Mott* v. *Cline* (1927) 200 Cal. 434, 446 [253 P. 718].) Moreover, contracts purporting to do so are invalid and unenforceable as contrary to public policy. (*Avco, supra,* at p. 800.) ■ " ' "The police power being in its nature a continuous one, must ever be reposed somewhere, and cannot be barred or suspended by contract or irrepealable law. It cannot be bartered away even by express contract." [Citations.] It is to be presumed that parties contract in contemplation of the inherent right of the state to exercise unhampered the police power that the sovereign always reserves to itself for the protection of peace, safety, health and morals. Its effect cannot be nullified in advance by making contracts inconsistent with its enforcement . . . .' [Citations.]" (*Carty, supra,* at p. 342, quoting *Mott* v. *Cline, supra,* at p. 446.) Thus, taking heed of the long-established rule that a contract must, if possible, be interpreted so as to make it "lawful, operative, definite, reasonable, and capable of being carried into effect" (Civ. Code, § 1643), we point out that were we to uphold the interpretation urged by plaintiffs, i.e., that the contract effectuated a wholesale freeze of zoning neither contemplated nor authorized by the Williamson Act, we would be compelled to find the agreement herein invalid.[9]

_____

[9]Under the mandates of Government Code sections 51242 and 51243, land subject to

■ In summary, the contract does not properly lend itself to an interpretation that would prohibit the County from changing the zoning. Secondly, even if we were to find that it could be so construed, the contract would be invalid as an attempt by the County to surrender its future right to exercise the police power.

For each of the above-stated reasons, we find that the contract is not reasonably susceptible to the meaning advanced by plaintiffs. Consequently, the extrinsic evidence admitted by the trial court will not support the judgment because it is irrelevant.[10] (*Tahoe National Bank* v. *Phillips* (1971) 4 Cal.3d 11, 16-17 [92 Cal.Rptr. 704, 480 P.2d 320]; *Blumenfeld* v. *R.H. Macy & Co., supra*, 92 Cal.App.3d 38, 46.) Since our decision on this point is dispositive, it is not necessary to address plaintiffs' contentions concerning the Contract Clause of the Constitution.

## II.

■ Next, we proceed to examine the trial court's determination, based upon evidence of legislative history,[11] that the California Coastal Act does not apply to greenhouses.

Public Resources Code section 30600, subdivision (a) provides: "In addition to obtaining any other permit required by law from any local government or from any state, regional, or local agency . . . any person wishing to perform or undertake *any development* in the coastal zone . . . shall obtain a coastal development permit." (Italics added.)

The definition of "development" is found in Public Resources Code section 30106: "'Development' means . . . the placement or erection of *any*

---

Williamson Act contracts must be restricted to agricultural and compatible uses. By promising to so restrict plaintiffs' property, County did not relinquish its right to exercise the police power, but simply reiterated its obligation to exercise that power in accordance with state law. (See Cal. Const. art. XI, § 7.)

[10]The trial court found oral representations concerning the effect of the contract on the zoning of the subject property were made by County officials without authority to contractually bind the County. Thus, extrinsic evidence to this effect, even if admissible, would not support the position maintained by plaintiffs.

[11]The trial court's conclusion was based solely upon a letter written by the author of Senate Bill No. 1277 (the California Coastal Act of 1976), and incorporated into the Senate Journal Record during deliberations on the act. The letter reads, in pertinent part: "3. The use of agricultural lands: ¶ SB 1277 does not, is not intended to, and should not be construed to authorize the coastal commission to mandate, prescribe or otherwise regulate agricultural operations or management practices (including, but not limited to: types of animals or poultry to be raised or processed; cropping patterns; irrigation, cultivation or yield techniques). . . ." Even had this letter been properly considered by the trial court, we note that there is no reference therein to exemptions for agricultural *structures*. Its relevance therefore is, at best, marginal.

*solid material or structure* . . . [¶] As used in this section, 'structure' *includes, but is not limited to,* any building, road, pipe, flume, conduit, siphon, aqueduct, telephone line, and electrical power transmission and distribution line." (Italics added.)

■ It has long been held that where statutory language is clear and unambiguous "'there is no need for construction, and courts should not indulge in it' . . . . Unless [the party urging an alternative construction] can demonstrate that the natural and customary import of the statute's language is either 'repugnant to the general purview of the act,' or for some other compelling reason, should be disregarded, this court must give effect to the statute's 'plain meaning.' [Citation.]" (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218-219 [188 Cal.Rptr. 115, 655 P.2d 317].)

■ In the instant case, the language of the statute is clear: permits must be obtained for the placement or erection of any development, i.e., any solid material or structure. Common sense tells us that greenhouses are solid structures, and therefore fall within the purview of the Coastal Act. Moreover, plaintiffs have not demonstrated any reason, compelling or otherwise, why the plain meaning of section 30106 should be disregarded. Accordingly, we conclude that greenhouses do constitute a development under the Coastal Act for which plaintiffs must obtain the requisite permits.

### III.

In an attempt to prevail on their civil rights cause of action under 42 United States Code section 1983, and in the process to perhaps collect an award for attorney fees, plaintiffs cite numerous constitutional provisions and decisional law with little or no explanation of their applicability. We find these claims to be without merit.

■ Regarding their claim that application of the revised A-P ordinance constitutes a "taking," we remind plaintiffs that a zoning ordinance may be held unconstitutional and subject to invalidation "'only when its effect is to deprive the landowner of substantially all reasonable use of his property.'" (*Griffin Development Company* v. *City of Oxnard* (1985) 39 Cal.3d 256, 266 [217 Cal.Rptr. 1, 703 P.2d 339]; *Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266, 277 [157 Cal.Rptr. 372, 598 P.2d 25].) In our view, plaintiffs have failed to make out even a colorable claim that application of the revised A-P ordinance results in a "taking." (See *Griffin* and *Agins, supra,* for a thorough discussion of the law on this issue.)

Nor have plaintiffs presented any viable argument with respect to their contention that the permit process is violative of the "basic fundamental

fairness guaranteed under the due process clause of the United States Constitution. . . ." (See *Grupe* v. *California Coastal Commission* (1985) 166 Cal.App.3d 148 [212 Cal.Rptr. 578] and discussion therein.)

Similarly, we reject plaintiffs assertions concerning an alleged deprivation of substantive due process. ▮ Where a statute or regulation is reasonably related to a legitimate governmental purpose, "limited economic regulation of the use of real property imposed for the public welfare" does not violate substantive due process. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 409-410 [128 Cal.Rptr. 183, 546 P.2d 687].) Suffice it to say, the permit requirements at issue are reasonably related to the legitimate governmental objective, expressed in Public Resources Code section 30001, subdivision (b), of preserving and protecting the state's natural and scenic resources. (See *Griffin, supra,* 39 Cal.3d 256; *Grupe* v. *California Coastal Commission, supra,* 166 Cal.App.3d 148 and discussions therein.)

It is well settled that "[t]here is no constitutional right to own property free from regulation. Neither the state nor the federal Constitution guarantees any person absolute liberty of action. . . . 'We do not consider lightly the importance of the constitutional guarantee attaching to private ownership and use of real property. . . . However, more than 50 years ago, it was clearly established that property ownership rights, reserved to the individual by constitutional provision, must be subordinated to the rights of society. It is now a fundamental axiom in the law that one may not do with his property as he pleases; his use is subject to reasonable restraints to avoid societal detriment . . . .' [Citations.]" (*Whaler's Village Club* v. *California Coastal Commission* (1985) 173 Cal.App.3d 240, 253 [220 Cal.Rptr. 2].)

Having concluded that plaintiffs have no cause of action under 42 United States Code section 1983, we necessarily reject their claims concerning attorney's fees under section 1988.

### Disposition

The judgment below is affirmed insofar as it denies plaintiffs/cross-appellants' claims under The Civil Rights Act and requires a discretionary permit for the construction of additional dwellings on the subject property. In all other respects, the judgment is reversed and the trial court ordered to enter judgment in favor of appellants, the County and the Commission. The injunction issued by the trial court is dissolved. Each party is to bear their own costs on appeal.

Agliano, Acting P. J., concurred.

**BRAUER, J.,** Concurring.—I join in parts II and III of the opinion.

As to part I, I consider the discussion of contract interpretation in the context of the parol evidence rule to be beside the point even though the case was tried on that theory. Delucchi's position is that he was induced to enter into a Williamson Act agreement by the County's representation that the then-existing zoning would remain in effect during the life of the agreement. Evidence in support of such a contention is not designed to vary or interpret a writing but to establish that the agreement, though clear, is unenforceable because entered into on the basis of either a mutual mistake or a unilateral mistake brought about by the County's fault. (Rest.2d Contracts, §§ 152, 153.) Such an inducement may always be proved by parol evidence and does not invoke the rules laid down in *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]. (2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 32.4.) But the remedy for mistake is rescission (*Guthrie v. Times-Mirror Co.* (1975) 51 Cal.App.3d 879, 884 [124 Cal.Rptr. 577]), a form of relief Delucchi does not seek as it would avail him nothing.

I would base the decision squarely on *Avco Community Developers, Inc. v. South Coast Regional Com.* (1976) 17 Cal.3d 785, 800 [132 Cal.Rptr. 386, 553 P.2d 546] which binds us and renders unenforceable a representation such as that found to have been made here. In the light of *Avco,* Delucchi of course cannot have the remedy of reformation which is sometimes available in equity to the innocently mistaken party and is similar in effect to the specific performance he seeks. (Civ. Code, § 3399; Rest.2d Contracts, § 155.)

A petition for a rehearing was denied April 30, 1986, and the petition of plaintiffs and appellants for review by the Supreme Court was denied June 18, 1986.