*253
 
 Opinion
 

 SONENSHINE, J.
 

 Golden Security Thrift & Loan Association (Golden Security) appeals from a summary judgment entered in favor of First American Title Insurance Company (First American) in Golden Security’s action arising out of the insurer’s denial of a claim. We affirm.
 

 Factual and Procedural Background
 

 In 1992, Golden Security loaned William M. Green $450,000 to purchase a parcel of land in Montclair, California. Golden Security, as the named insured, obtained title insurance from First American—an ALTA
 
 [1]
 
 lender’s policy and two endorsements, only one of which is relevant here. The CLTA
 
 [2]
 
 form 116 endorsement contains the clause which has given rise to this lawsuit. It provides, in pertinent part, “[T]he map attached to this policy shows the correct location and
 
 dimensions
 
 of said land according to those records which under the recording laws impart constructive notice .... The company hereby insures the insured against loss ... in the event that the assurance herein shall prove to be incorrect.” (Italics added.)
 

 It is undisputed the boundaries of the irregularly shaped lot are depicted on the map as follows: 380 feet in length on the east side, 360 feet (115 plus 90 plus 155) on the west side, 130 feet wide on the north side, 140 feet on the south side and 20 feet at the southwest comer. And it is undisputed those boundaries are, in fact, accurate and correct according to the pertinent public records.
 

 Herein lies the problem: In addition to the boundary figures, the map contains a notation stating, “2.06 AC M/L,” meaning the total
 
 area
 
 of the property is 2.06 acres, more or less. However, the actual area encompassed within the boundaries is 1.36 acres, more or less.
 

 Green defaulted on the loan. Golden Security foreclosed, purchased the property and put it up for sale. Anticipating a substantial loss due to the discrepancy between the stated and actual total acreage, it gave First American notice of a claim under the policy.
 
 [3]
 
 First American denied the claim, asserting the policy insured against inaccuracies as to the location and
 
 *254
 
 dimensions of the parcel, but not as to mathematical calculations regarding total acreage or area.
 

 Golden Security sued, alleging causes of action for breach of contract, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing and declaratory relief. All theories of recovery were based on First American’s refusal to indemnify for any loss occasioned by the acreage discrepancy or, as Golden Security calls it, the “shortage of area.”
 

 First American and Golden Security both moved for summary judgment. First American contended the insured could not prove its claim was covered because it admitted the actual location and dimensions of the property were precisely as depicted on the map. Golden Security argued the word “dimensions” as used in the form 116 endorsement, was either synonymous with “area,” or susceptible to more than one reasonable interpretation, so as to be construed against the insurer.
 

 The trial court granted summary judgment to First American. In its notice of ruling, it stated, “Motions for summary judgment have [been] submitted by both parties, each motion turning on the . . . meaning of the word ‘dimensions,’ as used in the title policy. The importance of this term is great, because the Area of the parcel purchased by the plaintiff, and insured by the defendant, was apparently less than plaintiff expected. The policy provides in relevant part, defendant’s warranty: ‘. . . the map attached to this policy shows the correct location and dimensions ... [of the subject property]’, but does not expressly refer to the Area of said property. [¶ After consideration of the papers submitted and the argument of counsel, the court find the meaning of Dimensions, as used in the policy is, first, not ambiguous and, second, that it refers only to the length of those lines which describe the boundaries of the parcel. The word does not mean ‘area.’ [¶ In light of this finding, the court is of the view that no other material, disputed, issues remain and summary judgment must be entered in favor of the defendant.” A formal written order was subsequently filed
 
 [4]
 
 and summary judgment entered in favor of First American.
 

 
 *255
 
 Discussion
 

 I
 

 Golden Security contends the trial court erred in determining the meaning of the word “dimensions.” The sole issue is proper construction of an instrument. Extrinsic evidence was admitted as an aid to interpretation. That evidence—dictionary definitions, industry usage, mathematical terminology, etc.—was not in conflict. Thus, we are not bound by the trial court’s interpretation, but independently determine the meaning of the policy.
 
 (Parsons
 
 v.
 
 Bristol Development Co.
 
 (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839];
 
 Delucchi
 
 v.
 
 County of Santa Cruz
 
 (1986) 179 Cal.App.3d 814, 821 [225 Cal.Rptr. 43].)
 

 Analysis of a written contract starts with an examination of its language. (Civ. Code, § 1639.) In insurance coverage cases, “the proper initial focus must be the language of the policy itself. . . . The first issue is whether the claim falls within the scope of the basic coverage of the policy . . . defined in the insuring clause. ... If the claim does not fall within the insuring clause, there is no need to analyze further. . . . There is no coverage.”
 
 (American Star Ins. Co.
 
 v.
 
 Insurance Co. of the West
 
 (1991) 232 Cal.App.3d 1320, 1325 [284 Cal.Rptr. 45], citations omitted.)
 

 Golden Security contends its claim falls within the scope of the basic coverage of the policy. It carries the burden of proof of that element.
 
 (Garvey
 
 v.
 
 State Farm Fire & Casualty Co.
 
 (1989) 48 Cal.3d 395, 406 [257 Cal.Rptr. 292, 770 P.2d 704]; see also
 
 Intel Corp.
 
 v.
 
 Hartford Acc. & Indem. Co.
 
 (9th Cir. 1991) 952 F.2d 1551, 1557 [“ ‘[w]hile the burden is on the insurer to prove a claim covered falls within an exclusion, the burden is on the insured initially to prove that an event is a claim within the scope of the basic coverage’ ”].) Even on a motion for summary judgment by the insurer, the burden remains with the insured. As provided in Code of Civil Procedure section 437c, subdivision (o)(2), “A defendant ... has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff... to show that a triable issue of one or more material facts exists as to that cause of action or defense thereto.”
 

 The basic coverage at issue is the assurance the attached assessor’s map “shows the correct location and
 
 dimensions
 
 of said land according to
 
 *256
 
 [public] records.” (Italics added.) Golden Security contends the word “dimensions” is synonymous with “size/area/square footage/acreage" and like descriptions of the “magnitude” or “extent” of the surface space occupied. It further asserts if “dimensions” is capable of two meanings, it is ambiguous and, because not defined in the policy, should be interpreted to include area, square footage, acreage, and other words embracing the concept of overall size. First American contends “dimensions,” in common understanding and usage, in dictionary definitions and in mathematics, inter alia, refers to measurements such as length and width, height and depth, which are linear in nature, extending in a single direction. “Area,” on the other hand, must be calculated with reference to the dimensions of a given geometric figure. First American says the words are not interchangeable. We agree.
 

 Civil Code section 1644 provides, “The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed.” As stated by our Supreme Court, “The ‘clear and explicit’ meaning of [contract] provisions, interpreted in their ‘ordinary and popular sense’ . . .
 
 controls
 
 judicial interpretation. . . .”
 
 (AIU Ins. Co.
 
 v.
 
 Superior Court
 
 (1990) 51 Cal.3d 807, 821-822 [274 Cal.Rptr. 820, 799 P.2d 1253], citations omitted, italics added.)
 

 We take judicial notice of various dictionary definitions of “dimensions” (Evid. Code, § 451, subd. (e)), as the best arbiter of the ordinary and popular meaning , i.e., “[t]he true signification” of the word. (Evid. Code, § 451, subd. (e).) According to Webster’s New World Dictionary (3d college ed. 1988), the word indicates a “measuring off,” and means, inter alia, “1. any measurable extent, as length, width, depth, etc. ... 2.
 
 [pl]
 
 measurements in length and width, and often depth.” The word “area” is not found anywhere in the definition. Webster’s New Universal Unabridged Dictionary (2d ed. 1983) defines “dimension” as “1. extension in a single line or direction, as length, breadth, and thickness or depth; as,
 
 a line has one dimension, length; a plane has two dimensions, length and breadth; and a solid has three dimensions, length, breadth, and thickness or depth.
 
 [¶ 2.
 
 [pl]
 
 measurement in length, breadth, and often, height; as, the
 
 dimensions
 
 of a room, of a ship, of a farm, of a kingdom, etc.” (Some italics added.) Webster’s Third New International Dictionary (3d ed. 1981) states “a plane has two [dimension] (length and breadth).” Webster’s New Collegiate Dictionary (1977) defines “dimension” as a “measure in one direction;
 
 specif.
 
 one of three or four coordinates determining a position in space or space and time[.]” The American Heritage Dictionary (2d college ed. 1982) defines the word as “1. A measure of spatial extent, esp. width, height or length . . . .”
 

 
 *257
 
 The word “area” simply does not fit within these definitions. Indeed, the words “area” and “dimensions” connote discrete concepts, “area” being the product of “dimensions” combined in a mathematical formula. As stated in the uncontradicted declaration of one of First American’s experts, our common experience in the field of mathematics teaches that the words “dimensions” and “area” have distinct meanings. The former refers to the linear measures of the sides or base of a geometric object, for instance, while the latter must be calculated as the product of the dimensions. Thus, the “area” of a rectangle is not one of its dimensions, but it can be ascertained by multiplying the two dimensions of the figure—its length times its width.
 

 We find no ambiguity in the word “dimensions” as used in the policy. We are persuaded an interpretation which excludes “area” and other descriptions of the total extent of the space occupied within the property lines is compelled by the plain meaning of the word.
 
 [5]
 

 II
 

 Golden Security advances another theory. It contends “shortage of area,” though not mentioned in the policy, should be afforded coverage by inference. The argument, distilled to its nonsensical essence, is that coverage under the ALTA policy cannot be determined by examining the policy itself. Rather, one must refer to a CLTA policy which
 
 excludes
 
 “shortage of area.” Because the ALTA policy is broader and more expensive than the CLTA policy, we should infer “shortage of area” is
 
 included
 
 in it! This attempt to achieve coverage through incorporation by reverse reference is an absurdity. As we have noted,
 
 ante,
 
 the
 
 language
 
 of the contract must be the starting point. (Civ. Code, § 1639.) If coverage is not found there, the case is over.
 
 (American Star Ins. Co.
 
 v.
 
 Insurance Co. of the West, supra,
 
 232 Cal.App.3d
 
 *258
 
 at p. 1325.) Golden Security admits the policy contains no language insuring against “shortage of area.”
 
 [6]
 

 III
 

 Because Golden Security conceded the boundary dimensions depicted on the map were accurate, and, when put to the test, could not establish its claim was covered, the court properly disposed of the breach of contract cause of action. The determination the insurer owed no duty to indemnify necessarily destroyed the bad faith cause of action as well.
 
 (Horsemen’s Benevolent & Protective Assn.
 
 v.
 
 Insurance Co. of North America
 
 (1990) 222 Cal.App.3d 816, 822 [271 Cal.Rptr. 838];
 
 Brodkin
 
 v.
 
 State Farm Fire & Casualty Co.
 
 (1989) 217 Cal.App.3d 210, 218 [265 Cal.Rptr. 710].) Additionally, the summary judgment in favor of First American disposed of any issue involved in declaratory relief.
 
 [7]
 

 That leaves only Golden Security’s negligent misrepresentation cause of action. The complaint alleges Golden Security relied to its detriment on First American’s false representation in the policy that the map showed the correct location and dimensions (read “area or total acreage”) of the property. There are no allegations of representations outside the policy itself.
 
 [8]
 
 As will be seen, the cause of action fails as a matter of law.
 

 “Title insurance is a contract for indemnity under which the insurer is obligated to indemnify the insured against losses sustained in the event that a specific contingency, e.g., the discovery of a lien or encumbrance affecting title, occurs. [Citations.] The policy of title insurance, however, does
 
 not
 
 constitute a representation that the contingency insured against will not occur. [Citations.] Accordingly, when such contingency occurs,
 
 no action for negligence or negligent misrepresentation will lie against the insurer based upon the policy of title insurance alone.
 
 [Citations.] .... ‘A title policy is
 
 not
 
 a summary of the public records and the insurer is
 
 not
 
 supplying
 
 *259
 
 information; to the contrary he [or she] is giving a contract of indemnity.’ ”
 
 (Lawrence
 
 v.
 
 Chicago Title Ins. Co.
 
 (1989) 192 Cal.App.3d 70, 74-75 [237 Cal.Rptr. 264], some italics added.)
 

 The judgment is affirmed. First American shall recover its costs on appeal.
 

 Crosby, Acting P. J., and Rylaarsdam, J., concurred.
 

 [1]
 

 ALTA is an acronym for American Land Title Association.
 

 [2]
 

 CLTA is an acronym for California Land Title Association.
 

 [3]
 

 According to Golden Security, lenders want assurances about the fundamental characteristics of the property, in order to decide whether its fair market value will adequately collateralize the loan. In this case, the ultimate decision to fund the loan was dependent upon, inter alia, correct information about the property’s
 
 size.
 
 In a nutshell, because there was less
 
 *254
 
 than 2.06 acres, the loan was undercollateralized and Golden Security, in selling the property, would experience a substantial shortfall.
 

 [4]
 

 The formal written order states, in relevant part, “The policy ... did not insure [Golden Security] that the assessor’s map . . . correctly depicted the area of the property insured . . . because, as a matter of law, the word ‘dimensions’ within the meaning of the policy is not ambiguous, and does not include ‘area’; it refers only to the length of those lines which describe the boundaries of the property.”
 

 [5]
 

 Although we need go no further, we note the plain-meaning interpretation comports with the meaning of the contract taken as a whole. (Civ. Code, § 1641 [“. . . the whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other”].) The assurance of the form 116 endorsement is that “the map attached to this policy shows the correct location and dimensions of said land
 
 according to those records which under the recording laws
 
 impart constructive notice as to said land.” (Italics added.) First American presented the expert declaration of Roger W. Therien, who attested, without material contradiction, that while the parameter dimensions of a parcel
 
 are
 
 used in public records under the recording laws to impart constructive notice, area is not. Thus, under the language of the clause taken as a whole, the accuracy of the boundary lines is assured, but the accuracy of the “2.06 AC M/L” area is not.
 

 [6]
 

 Golden Security suggests the policy’s failure to mention “shortage of area” is some sort of deceptive subterfuge “because it is an omission of an important aspect of coverage on the face of the policy.” What?
 

 [7]
 

 Moreover, in light of our determination Golden Security’s claim was properly denied, we need not decide whether First American had a duty to conduct a physical inspection or survey of the property or otherwise determine the accuracy of the map’s stated total acreage.
 

 [8]
 

 Although we need not discuss the point, we note Golden Security would have had a difficult time proving detrimental reliance on the map’s inaccurate statement of 2.06 AC M/L, when,
 
 before
 
 it purchased the policy and
 
 before
 
 it funded the loan, it was in possession of the first appraisal report showing the property actually consisted of 1.36 acres, more or less!