[L.A. No. 31609. Oct. 13, 1983.]

SHELTER CREEK DEVELOPMENT CORPORATION et al.,
Plaintiffs and Appellants, v.
CITY OF OXNARD et al., Defendants and Appellants.

734

COUNSEL

Drummy, Garrett, King & Harrison, Alan I. White, Charles W. Parret and
John C. Murphy for Plaintiffs and Appellants.

Richard L. Johnson and Thomas L. Berkley as Amici Curiae on behalf of Plaintiffs and Appellants.

K. D. Lyders, City Attorney, for Defendants and Appellants.

Robert M. Myers, City Attorney (Santa Monica), Stephen Shane Stark, Assistant City Attorney, Jonathan S. Horne and Karl M. Manheim, Deputy City Attorneys, as Amici Curiae on behalf of Defendants and Appellants.

## OPINION

**MOSK, J.**—Plaintiffs, the owners of a 216-unit apartment complex in the City of Oxnard, and a real estate developer who holds an option to purchase the property, seek to convert the structure to a stock cooperative form of ownership. The city has enacted an ordinance that provides a special use permit must be obtained to accomplish the conversion and sets forth certain physical standards to which the structure should conform to qualify for a permit.

Plaintiffs claim that the ordinance is unconstitutional and, moreover, that it does not apply to their project because of a statute containing a grandfather clause excepting certain stock cooperative conversion projects from the requirements of local ordinances. We conclude that their exemption argument is meritorious. Therefore, we do not reach the constitutional issues raised by the parties.

A stock cooperative is defined in section 11003.2 of the Business and Professions Code as a corporation formed for the purpose of holding title to improved real property. The shareholders receive the right of exclusive occupancy of a portion of the property, and that right may only be transferred concurrently with the shares.

State law prior to 1979 provided, as it does presently, that shares in a stock cooperative could not be sold until a public report setting forth various matters pertaining to the property was obtained from the Department of Real Estate (Bus. & Prof. Code, §§ 11004.5; 11010; 11010.2), but stock cooperatives were not required to comply with the provisions of the Subdivision Map Act (Gov. Code, § 66410 et seq., Stats. 1977, ch. 234, § 3, pp. 1033-1034). The act vests the authority to control the design and improvement of subdivisions of five or more units in the legislative bodies of local agencies. (*Id.*, § 66411.) It requires that the local agency approve a subdivision map

for all subdivisions as defined therein (*id.,* §§ 66426; 66458), and approval of the map depends upon a determination by the local body that the map is consistent with the local entity's plans and ordinances (*id.,* §§ 66473; 66473.5; 66474; 66474.2). In September 1979, the Legislature amended section 66424 of the Government Code to include stock cooperatives within the definition of a "subdivision" under the Subdivision Map Act, so as to require stock cooperative conversion projects to comply with the provisions of the act. (Stats. 1979, ch. 1192, § 1, pp. 4691-4692.) The amendment became effective on January 1, 1980.

The measure which amended section 66424 contained the grandfather clause relied on by plaintiffs. It provides in subdivision (b) of section 8 (hereafter section 8) that governmental agency regulation of stock cooperative conversions under the provisions of the Subdivision Map Act which was "exercised pursuant to a legislative enactment prior to January 1, 1980, shall not be invalidated by this section; provided that no such regulation enacted after July 1, 1979, shall affect a stock cooperative conversion if the application for that conversion's public report, including payment of an appropriate fee, was made prior to July 1, 1979." (Stats. 1979, ch. 1192, § 8, subd. (b), p. 4695.)

On April 1, 1980, the city adopted ordinance No. 1805, which requires that a special use permit be obtained for stock cooperative conversions, and sets forth certain conditions for the issuance of a permit. The measure was to take effect on May 1, 1980, and it provides that any project which had not received a special use permit as of March 6, 1980, must comply with the ordinance.

Plaintiffs applied for a public report from the Department of Real Estate on August 18, 1978, i.e., almost a year prior to the July 1, 1979, date referred to in section 8, and they paid the required fee. However, they made no application to the city for the special use permit required by ordinance No. 1805.[1]

In June 1980, they filed a complaint for declaratory relief, seeking a determination that the ordinance is unconstitutional and that it is inapplicable to their project because of the grandfather clause in section 8. They made a motion for summary judgment on these grounds, and the parties entered into certain stipulations for the purpose of the motion. The trial

---

[1]Plaintiffs were excused from making such an application because, as we shall conclude, they were exempted from the entire ordinance by operation of the grandfather clause of the statute.

court denied the motion deciding, inter alia, that section 8 does not exempt plaintiffs' project from local regulation. It declined to rule on the constitutionality of the ordinance because it deemed the issue to be outside the matters stipulated by the parties for the purpose of the motion. Thereafter, plaintiffs filed a second motion for summary judgment, challenging the constitutionality of the ordinance. This time, the trial court granted the motion, holding that the ordinance was unconstitutional as applied to plaintiffs' project; it enjoined the city from attempting to enforce the ordinance against plaintiffs.

■■■■■ On this appeal from the ensuing judgment,[2] the city challenges the jurisdiction of the trial court to decide the constitutionality of the statute as applied to plaintiffs' property, and the sufficiency of the evidence to sustain the court's finding of unconstitutionality of the statute as applied. Plaintiffs oppose these contentions and urge, in addition, that they were not required to comply with the ordinance because of the grandfather clause in section 8.

As we have seen, section 8 provides that local regulation of stock cooperative conversions enacted after July 1, 1979, under the Subdivision Map Act would not affect conversions as to which an application for a public report from the Department of Real Estate had been made before July 1, 1979, and the application fee paid. Since plaintiffs had applied for the report and paid the fee in 1978, the exemption would appear applicable to them. However, claims the city, the exemption does not apply because by its terms it relates only to those local regulations passed after July 1, 1979, under the authority of the Subdivision Map Act. It asserts that ordinance No. 1805 was not enacted pursuant to that act but, rather, under the authority granted to local bodies by other state statutes (e.g., Gov. Code, § 65800 et seq.); ergo, the exemption does not apply to stock cooperative conversions within the scope of ordinance No. 1805.

This contention is without merit. The ordinance was enacted after January 1, 1980, which is the effective date of the amendment to section 66424 of the Government Code making stock cooperative conversions subject to the Subdivision Map Act. After that date, the city was required to apply the provisions of the act to all stock cooperative conversion projects unless the Legislature allowed an exemption. In these circumstances, it cannot be said

---

[2]Plaintiffs filed a "cross appeal" from the trial court's denial of their first motion for summary judgment. This order is not appealable (Code Civ. Proc., § 904.1; *Shulze* v. *Schulze* (1953) 121 Cal.App.2d 75, 83 [262 P.2d 646]; *Nevada Constructors* v. *Mariposa etc. Dist.* (1952) 114 Cal.App.2d 816, 818 [251 P.2d 53]), and the appeal therefrom is dismissed.

that the adoption of the ordinance was not accomplished "under the provisions of the Subdivision Map Act." Assuming that the city had the authority from a source other than the act to regulate stock cooperative conversions (cf. *Norsco Enterprises* v. *City of Fremont* (1976) 54 Cal.App.3d 488, 496-497 [126 Cal.Rptr. 659]), the regulation of such conversions following the effective date of the amendment to section 66424 of the Government Code must necessarily also have been effected under the provisions of the act. Thus, the exemption set forth in section 8 applies to plaintiffs' project.[3]

The judgment is affirmed.

Richardson, J., Kaus, J., Broussard, J., and Grodin, J., concurred.

**BIRD, C. J.**—I respectfully dissent.

Today's majority opinion decides a case that the courts lack jurisdiction to hear. Plaintiffs have not exhausted their administrative remedies. In addition, the holding reached by the majority improperly undermines the city's attempt to resolve its local housing problems.

I.

By this action for declaratory relief, plaintiffs are seeking to be relieved from the requirements of the city conversion ordinance. However, the law is well settled that the exhaustion of administrative remedies is a jurisdictional prerequisite to obtaining judicial relief. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 293 [109 P.2d 942, 132 A.L.R. 715]; *Mountain View Chamber of Commerce* v. *City of Mountain View* (1978) 77 Cal.App.3d 82, 88 [143 Cal.Rptr. 441].) This doctrine is not simply a matter of judicial discretion, but a fundamental rule of law. (*Mountain View Chamber of Commerce, supra,* 77 Cal.App.3d at p. 88.)

In this case, plaintiffs have never applied for a special use permit pursuant to the city ordinance nor sought a variance from the conversion regulations. Inexplicably, this jurisdictional problem is not even addressed by the majority opinion. Yet, unless plaintiffs can establish as a matter of law that they are excused from the exhaustion requirement, this case is not properly before the courts.[1]

---

[3]Before the adoption of ordinance No. 1805 in April 1980, the city had enacted temporary ordinances which expired by their own terms, requiring that a special use permit be obtained as a condition to the conversion of a structure to a stock cooperative form of ownership. The city does not claim that these expired ordinances are relevant to plaintiffs' project.

[1]Since the failure to exhaust administrative remedies deprives a court of jurisdiction to hear the case, such a defect cannot be waived by a party's failure to raise it below. (*Jacobs* v. *Retail Clerks Union, Local 1222* (1975) 49 Cal.App.3d 959, 963 [123 Cal.Rptr. 309].)

Plaintiffs contend that their failure to exhaust administrative remedies should be excused because it would have been futile to pursue such remedies. However, "[f]utility is a narrow exception" to the exhaustion doctrine. (*Doyle* v. *City of Chino* (1981) 117 Cal.App.3d 673, 683 [172 Cal.Rptr. 844].) Plaintiffs must be able to "positively state what the administrative agency's decision in [their] particular case would be." (*Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761]; *Gantner & Mattern Co.* v. *California E. Com.* (1941) 17 Cal.2d 314, 318 [109 P.2d 932]; see also *Sea & Sage Audubon Society, Inc.* v. *Planning Com.* (1983) *ante* pp. 412, 418 [194 Cal.Rptr. 357, 668 P.2d 664].)

The record indicates that prior to the enactment of this ordinance plaintiffs sought to have their project expressly exempted from the conversion regulations. This request was denied by the city council. However, it does not necessarily follow that a legislative body's refusal to grant a specific exemption from the terms of a general zoning ordinance means that the agency administering the regulations will not permit development of the project.[2] It may well be impossible for the legislative body to determine "the varied factual situations to which the ordinance is not applicable because of . . . special considerations." (*Metcalf* v. *County of Los Angeles* (1944) 24 Cal.2d 267, 271 [148 P.2d 645].) This function properly rests with the administrative body on a case-by-case analysis. Thus, it cannot be assumed from the city council's refusal to exempt plaintiffs' project that their application for either a permit or a variance from the conversion regulations would have been denied by the planning commission.

Plaintiffs also rely on the fact that their project does not fully comply with the design requirements of the conversion ordinance. However, no evidence was introduced indicating the extent of such noncompliance. Many of the design standards contained in the ordinance were advisory and required only substantial conformity.

Thus, I cannot find as a matter of law that it would have been futile for plaintiffs to have exhausted their administrative remedies. The evidence does not establish that, after consideration of the individual circumstances of plaintiffs' project, the planning commission would have refused to permit the conversion.

The majority opinion does not address plaintiffs' futility argument. Instead, it merely concludes in a footnote that plaintiffs were excused from

---

[2]Unlike *Ogo Associates, supra,* 37 Cal.App.3d 830, 834, there is no evidence in this case that the city ordinance was enacted for the specific purpose of precluding plaintiffs' project.

applying for a special use permit "because . . . they were exempted from the entire ordinance by operation of the grandfather clause of the statute." (Maj. opn., *ante,* at p. 736, fn. 1.) In my view, however, plaintiffs were not entitled to apply to a court for judicial construction of the grandfather clause without first seeking administrative relief which might have made judicial action unnecessary.

The only way plaintiffs would be "exempted" from the operation of the local ordinance is if the ordinance is found unconstitutional because it is preempted by state law. (Cal. Const., art. XI, § 7.)[3] And, the only way plaintiffs may properly challenge the ordinance's constitutionality, without first exhausting the administrative remedies it provides, is to bring an action to determine whether the ordinance is constitutional *on its face.* (*State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 250-251 [115 Cal.Rptr. 497, 524 P.2d 1281].)

The majority apparently accept plaintiffs' claim that their challenge is to the *facial* validity of the ordinance. Yet, plaintiffs do not contend that the permit requirement for conversion of apartments to stock cooperatives is invalid generally. They object only to its application to certain conversions—i.e., those for which an application for a public report was made prior to July 1, 1979.

Where an ordinance is alleged to be unconstitutional *as applied* to a particular property, administrative relief (in the form of an exception or a variance) must be sought before resort to the courts is permitted. (*Metcalf* v. *County of Los Angeles, supra,* 24 Cal.2d at p. 270; *Igna* v. *City of Baldwin Park* (1970) 9 Cal.App.3d 909, 914-915 [88 Cal.Rptr. 581]; see also *Pan Pacific Properties, Inc.* v. *County of Santa Cruz* (1978) 81 Cal.App.3d 244, 249-250 [146 Cal.Rptr. 428].) No such administrative relief was sought in the present case.

Since the exhaustion doctrine has not been complied with, this court lacks the jurisdiction to hear plaintiffs' case.

## II.

I have serious reservations about the majority's conclusion that the conversion ordinance is inapplicable to plaintiffs' development, because of the

---

[3]Article XI, section 7 provides that "[a] county or city may make and enforce within its limits all local, police, sanitary and other ordinances and regulations not in conflict with general laws."

grandfather clause contained in the legislation amending the Subdivision Map Act. (Stats. 1979, ch. 1192, § 8, p. 4695.) By its terms, the grandfather clause only pertains to the regulation of stock cooperative conversions "under the provisions of the Subdivision Map Act." The conversion ordinance, on the other hand, was purportedly enacted by the city pursuant to its zoning powers. (See Gov. Code, § 65800 et seq.)

The majority's holding effectively gives to a developer, whose project satisfies the prerequisites for application of the grandfather clause, free rein to evade all local regulation of stock cooperative conversions. Such a drastic result would be justified only if either of two propositions were correct: (1) the 1979 amendment of the act to include stock cooperative conversions within the definition of a "subdivision" preempted regulation of such conversions pursuant to a local government's zoning powers; or (2) local governments have no power apart from the act to regulate the conversion of rental apartments into stock cooperatives. Neither of these questions is even considered by the majority. As a result, their opinion fails to provide a sound basis for reaching their holding.[4]

The issues have not been addressed by the majority. Nor have they yet been definitively resolved by the courts. However, a review of the legislative scheme indicates that the act was not intended to occupy the entire field of stock cooperative regulation. The act is located in the second division of title 7 of the Government Code. (See Gov. Code, § 66410 et seq.) That title is broadly labeled "Planning and Land Use," and comprehensively treats many aspects of land use regulation. (See Gov. Code, § 65000 et seq.)

The Subdivision Map Act merely focuses on one particular design control mechanism—the mapping process. The developer is required by the act to submit a map of his subdivision project to the local government for approval. (See Gov. Code, §§ 66426, 66452, 66457.) Approval of the map is based on whether the project conforms with the locality's general and specific land use plans. (See Gov. Code, §§ 66473.5, 66474.) Unlike the

---

[4]The sole rationale offered in support of the majority's holding is that, "[a]ssuming that the city had the authority from a source other than the act to regulate stock cooperative conversions [citation], the regulation of such conversions following the effective date of the amendment to section 66424 of the Government Code must necessarily also have been effected under the provisions of the act. Thus, the exemption set forth in [the legislation amending the act] applies to plaintiffs' project." (Maj. opn., *ante,* at p. 738, fn. omitted.)

This reasoning is illogical. Consider a city that has two independent sources of authority—e.g., state and federal law—for regulating a particular activity. If the federal law contains a proviso exempting the activity from regulation under its provisions in certain situations, does it necessarily follow that when the federal exemption applies, the city is precluded from relying on state authority to regulate that activity? The clear answer is no.

ordinance adopted by the city in this case, the act does not establish physical design standards for subdivisions.

In addition, the act itself seems to expressly disclaim any intent to preempt local regulation. Government Code section 66427 addresses certain mapping procedures and requirements for "a condominium project, a community apartment project, or . . . the conversion of five or more existing dwelling units to a stock cooperative." The section contains the following disclaimer: "Nothing herein shall be deemed to limit the power of the legislative body to regulate the design or location of buildings in such a project by or pursuant to local ordinances."

That a locality has authority apart from the act to regulate stock cooperative conversions also seems beyond dispute. "Land use regulation in California has historically been a function of local government under the grant of police power contained in California Constitution, article XI, section 7." (*Bounds* v. *City of Glendale* (1980) 113 Cal.App.3d 875, 879 [170 Cal.Rptr. 342], fn. omitted.) This section confers upon all cities and counties the power to "make and enforce within [their] limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.) More specifically, subdivisions (a) and (c) of Government Code section 65850 permit city and county governments to regulate by ordinance the use and design of buildings.

Thus, the grandfather clause exempting the conversion of certain stock cooperatives from regulation "under the provisions of the Subdivision Map Act" does not protect plaintiffs' project. Plaintiffs must comply with the conversion ordinance enacted pursuant to the city's police powers. The contrary holding of this court improperly interferes with the city's efforts to ensure adequate housing for all its residents.

Reynoso, J., concurred.