**SHELTER CREEK DEVELOPMENT CORPORATION; Leo A. O'Hearn; Margaret E. O'Hearn, Plaintiffs–Appellants,**

v.

**CITY OF OXNARD, Defendant–Appellee.**

**No. 86–6608.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1987.

Decided Feb. 2, 1988.

Donald R. Colvin, Los Angeles, Cal., for plaintiffs-appellants.

K.D. Lyders, City Attorney, Oxnard, Cal., for defendant-appellee.

Robert K. Best, Pacific Legal Foundation, Sacramento, Cal., for amicus.

Before ALARCON and NELSON, Circuit Judges, and MUECKE,* District Judge.

ALARCON, Circuit Judge:

Shelter Creek Development Corporation (Shelter Creek), Leo A. O'Hearn and Margaret E. O'Hearn (the O'Hearns) appeal from a judgment for the City of Oxnard (the City) in an action under 42 U.S.C. § 1983 (1982) challenging the constitutionality of the City's ordinance as applied to their property. We conclude that the matter is not ripe for judicial adjudication. We vacate the district court's judgment on the merits and remand with an order that the matter be dismissed.

I. FACTS

In January 1978, the O'Hearns purchased the Shelter Creek apartment complex in the City of Oxnard. Thereafter, the O'Hearns formed Shelter Creek in order to convert the apartment complex from rental

---

* Honorable Carl A. Muecke, District Judge, District of Arizona, sitting by designation.

units to a stock cooperative form of ownership.

Beginning in May 1979, the City undertook to regulate the conversion of rental apartments to stock cooperatives. Following a series of interim ordinances, the City adopted Ordinance No. 1805 on April 1, 1980. Ordinance No. 1805 required, *inter alia*, that units to be converted into stock cooperatives substantially comply with a wide range of building and parking restrictions applicable to new residential condominiums.

Prior to the enactment of Ordinance No. 1805, the O'Hearns informed the City of their position that enactment of the ordinance without an express exemption for the Shelter Creek apartment complex would be contrary to state law. The O'Hearns relied on California Senate Bill (SB) 823, effective January 1, 1980, which expressly included stock cooperatives within the definition of a "subdivision" under the Subdivision Map Act, Cal.Gov't Code § 66424 (West 1983). SB 823 contained a "grandfather clause" that exempted stock cooperative conversions from local control "under the provisions of the Subdivision Map Act," if the application for a public report and required fees had been submitted to the California Department of Real Estate prior to July 1, 1979. Because the O'Hearns had applied and paid the fees for a public report prior to July 1, 1979, they argued, SB 823 precluded the City from regulating the Shelter Creek conversion.

The City rejected the O'Hearns' position, concluding that it had power apart from the Subdivision Map Act to regulate the proposed Shelter Creek conversion. Accordingly, Ordinance No. 1805 was enacted with no exemptions. As so enacted, the ordinance effectively barred the O'Hearns from pursuing conversion of the Shelter Creek complex to a stock cooperative because they were unable to obtain the necessary insurance and funding absent the approval of the City.

It was not economically feasible or physically possible for the Shelter Creek apartment complex to comply with several of the restrictions imposed by Ordinance No. 1805. Ordinance No. 1805 provided for the issuance of special use permits. Neither Shelter Creek nor the O'Hearns, however, applied for a special use permit, nor did they formally request a variance. Instead, approximately two months after the City's enactment of Ordinance No. 1805, Shelter Creek and the O'Hearns instituted an action in Ventura County Superior Court. They sought a declaration that the ordinance was unconstitutional and that it was inapplicable to the Shelter Creek apartment complex because of the grandfather clause in SB 823.

The case was ultimately appealed to the California Supreme Court. That court agreed that the Shelter Creek apartment complex was exempt from the application of Ordinance No. 1805 because of the grandfather clause. *Shelter Creek Dev. Corp. v. City of Oxnard*, 34 Cal.3d 733, 669 P.2d 948, 195 Cal.Rptr. 361 (1983). The court expressly declined to address the constitutionality of the ordinance. *Id.* at 735, 669 P.2d at 948, 195 Cal.Rptr. at 361.[1]

Following the successful conclusion of their state court proceedings, plaintiffs instituted the present action under 42 U.S.C. § 1983 (1982). They alleged that the City's policy of regulating conversion of apartments to stock cooperatives was directed solely at plaintiffs and one other developer. They further alleged that implementation of the policy deprived plaintiffs of equal

---

**1.** We were informed at oral argument that after their victory in the California Supreme Court, plaintiffs abandoned their plan to convert the Shelter Creek apartments to a stock cooperative, apparently because of changed market conditions. Plaintiffs decided, instead, to convert the apartments to condominiums. Accordingly, they applied to the City's planning commission for a special use permit. The commission denied their application, and the city council affirmed the denial. Plaintiffs do not challenge these denials in the present action, which concerns only the constitutionality of Ordinance No. 1805 as applied to plaintiffs' initial proposal to convert to a stock cooperative. Plaintiffs' later application for a special use permit in connection with a different proposal is irrelevant to our decision in this matter and does not affect our conclusion that this matter is unripe for adjudication.

protection of the laws. They also claimed that the ordinance was unconstitutional, both on its face and as applied. They contended that because the restrictions on conversion were not rationally related to legitimate governmental purposes, Ordinance No. 1805 deprived them of a property interest without due process of law.[2]

Following a bench trial, the district court entered judgment for the City. Shelter Creek and the O'Hearns appeal from that judgment.

## II. JURISDICTION

█ This court has jurisdiction over the appeal from the district court's final judgment under 28 U.S.C. § 1291 (1982). The appeal was timely filed.

The question of ripeness goes to our subject matter jurisdiction to hear the case. *See Duke City Lumber Co. v. Butz*, 539 F.2d 220, 221 n. 2 (D.C.Cir.1976) (per curiam) (question of ripeness may be raised sua sponte by appellate court because it goes to court's subject matter jurisdiction), *cert. denied*, 429 U.S. 1039, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977). We must review and decide the question de novo. *See Peter Starr Prod. Co. v. Twin Continental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir. 1986) ("Subject matter jurisdiction presents a question of law, reviewable de novo by this court.").

## III. ANALYSIS

Both the Supreme Court and this court have declared that until a landowner seeks a permit or a variance under a governing land use or zoning ordinance, any claim that the ordinance is unconstitutional as applied to the landowner's property is not ripe for judicial adjudication.

In *Agins v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), the appellants claimed that a municipal zoning ordinance was unconstitutional on its face because it took their unimproved land without just compensation, in violation of the fifth and fourteenth amendments. The Supreme Court ruled that because the ordi-

nance, as authoritatively construed by the state court, permitted appellants to construct as many as five residences on their property, the ordinance was not facially unconstitutional. *Id.* at 260, 262–63, 100 S.Ct. at 2141, 2142–43. The Court declined, however, to address the question whether the ordinance could constitutionally be applied to prevent appellants from building the full complement of five homes: "Because the appellants have not submitted a plan for development of their property as the ordinances permit, there is as yet no concrete controversy regarding the application of the specific zoning provisions." *Id.* at 260, 100 S.Ct. at 2141; *accord MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986) (declining to rech merits of taking claim where landowner had failed to secure city's final position regarding application of the challenged zoning regulations to landowner's property); *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 297, 101 S.Ct. 2352, 2371, 69 L.Ed.2d 1 (1981) (constitutionality of application of Surface Mining Control and Reclamation Act not ripe for adjudication where "[t]here [was] no indication in the record that appellees ... availed themselves of the opportunities provided by the Act to obtain administrative relief" by requesting a variance or a waiver of Act's requirements).

In *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the Court found a landowner's regulatory taking claim to be premature under *both* the Just Compensation Clause of the fifth amendment and the Due Process Clause of the fourteenth amendment because the landowner had failed to seek a variance from the challenged ordinance and regulations. *Id.* at 186, 199–200, 105 S.Ct. at 3116, 3123–24. The Court explained that whether an ordinance is challenged as a taking for which just compensation must be paid under the fifth amendment or as an invalid exercise of police power under the

---

**2.** On this appeal, plaintiffs have abandoned their argument that the ordinance is unconstitu-

tional on its face. We, therefore, express no opinion on that issue.

fourteenth amendment, the courts are in no position to assess the constitutionality of the ordinance "until a final decision is made as to how the regulations will be applied to [the landowner's] property." *Id.* at 200, 105 S.Ct. at 3124.

The landowner in *Hamilton Bank,* like plaintiffs in the present case, argued that landowners should not be required to seek variances when suit is predicated on 42 U.S.C. § 1983, given the Court's earlier holding that exhaustion of administrative remedies is not a prerequisite to a section 1983 action. *Id.* at 192, 105 S.Ct. at 3120. *See Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) (reaffirming prior rulings that exhaustion of state administrative remedies is not a prerequisite to an action under section 1983). The Court rejected the landowner's argument, explaining that "[t]he question whether administrative remedies must be exhausted is conceptually distinct ... from the question whether an administrative action must be final before it is judicially reviewable." 473 U.S. at 192, 105 S.Ct. at 3120.

> [T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. *Patsy* concerned the latter, not the former.

*Id.* at 193, 105 S.Ct. at 3120. A landowner, therefore, can be required to seek a variance from the terms of the challenged ordinance before instituting a section 1983 action attacking application of that ordinance. Because the landowner in *Hamilton Bank* failed to do so, its attack was not ripe for adjudication. *Id.* at 193–94, 199–200, 105 S.Ct. at 3120–21, 3123–24.

In the recent case of *Kinzli v. City of Santa Cruz,* 818 F.2d 1449 (9th Cir.1987), we applied the above-described ripeness doctrine and ordered dismissal of an action challenging a zoning ordinance. In *Kinzli,* the Santa Cruz City Council enacted an ordinance implementing an initiative measure previously approved by the voters. The ordinance limited the uses available to greenbelt land, which included plaintiff landowners' property. The ordinance also barred extension of urban services to greenbelt land, except in certain limited circumstances. However, the ordinance allowed several specific uses under special use permits. *Id.* at 1452.

The landowners in *Kinzli* attempted to sell their property under a contract conditioned on city approval of residential development. The potential purchaser filed an application for such approval, but abandoned the application on being informed by a city engineer that the city could not provide water services to the property. *Id.*

Without submitting a follow-up application for a permit allowing any other use of the property, the landowners instituted a section 1983 action in federal court, alleging that application of the ordinance to their property constituted a taking without just compensation, a denial of equal protection, and a denial of substantive due process. The district court ruled that the substantive due process claim was not ripe for adjudication, but reached the merits of the other claims, finding against the landowners on each. *Id.* at 1452–53.

We reversed and ordered vacation of the district court's rulings on the merits. We concluded that *none* of landowner's claims was ripe for adjudication. Relying on the Supreme Court's decisions in *Hamilton Bank* and *MacDonald,* we explained that a landowner seeking to challenge application of a land use ordinance to his property must first obtain "a final and authoritative determination of the type and intensity of development legally permitted on the subject property." *Id.* at 1453 (quoting *MacDonald,* 106 S.Ct. at 2566). Absent an application for a variance, no such final and authoritative determination can be shown:

> [T]he "final decision" which inflicts a concrete injury on the plaintiff and is ripe for adjudication as a claim of a regulatory taking, even if the claim is

brought under 42 U.S.C. § 1983, requires at least two decisions against [landowners]: (1) a rejected development plan, and (2) a denial of a variance. [Landowners] have not secured or even attempted to secure either of these two requisite decisions.

*Id.* at 1454 (citation omitted).

We acknowledged that under the "futility exception" to the threshold requirement of a final determination, submission of a development plan is excused if the submission would be an " 'idle and futile act.' " *Id.* (quoting *Martino v. Santa Clara Valley Water Dist.*, 703 F.2d 1141, 1146 n. 2 (9th Cir.), *cert. denied*, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983)). We held, however, that the "futility exception" is unavailable unless and until landowner has submitted at least one "meaningful application" for development of the property and one "meaningful application" for a variance. *Id.* at 1455 & n. 6; *accord Lake Nacimiento Ranch Co. v. County of San Luis Obispo*, 830 F.2d 977, 980 (9th Cir. 1987). The landowners in *Kinzli* had failed to satisfy these requirements. Moreover, the application originally filed by the potential purchaser of the property had not been meaningful because it had been abandoned at an early stage of the approval process. 818 F.2d at 1455.

We also left no doubt that equal protection claims and substantive due process claims are to be analyzed for ripeness in the same way that regulatory taking claims are analyzed: "[T]he [landowners'] equal protection claim is not ripe for consideration by the district court 'until planning authorities and state review entities make a final determination on the status of the property.' The [landowners'] equal protection claim therefore is not ripe, just as their taking claim is not ripe." *Id.* at 1455–56 (quoting *Norco Construction, Inc. v. King County*, 801 F.2d 1143, 1145 (9th Cir. 1986)). Likewise, the landowners' due process claim was not ripe because they had

failed to "obtain final decisions regarding the application of the regulations to their property and the availability of variances." *Id.* at 1456; *accord Herrington v. County of Sonoma*, 834 F.2d 1488, 1496 (9th Cir. 1987) (2–1) (*Kinzli*'s final decision requirement applies to substantive due process and equal protection claims).

■ Applying the foregoing principles to the matter now before us, it is clear that plaintiffs' challenge to Ordinance No. 1805 is not ripe for judicial adjudication. Plaintiffs unsuccessfully sought to have the City enact the ordinance with an express exemption for the Shelter Creek apartment complex. Once the ordinance was enacted, however, plaintiffs never applied for a variance or special use permit. Such an application may well have been fruitful, in light of what the district court characterized as "undisputed testimony that the planning commission does not insist on strict compliance with the regulations, but instead will permit some deficiencies in various requirements...." *See also MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 106 S.Ct. 2561, 2567, 91 L.Ed.2d 285 (1986) ("The local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with the one hand they may give back with the other."); *cf. Herrington*, at 1497–98 (where testimony of county officials indicated that application for variance would have been futile, plaintiff was relieved from *Kinzli*'s requirement that variance be sought).

Without seeking an authoritative decision by the City, Shelter Creek and the O'Hearns, and their lenders and insurers, erroneously assumed that Ordinance No. 1805 applied to bar conversion of the apartment complex to a stock cooperative. In fact, because plaintiffs never sought a special use permit, the City never applied the ordinance to their property.[3] The City

---

3. Plaintiffs' brief speaks in terms of both the "application" of the ordinance to plaintiffs' property and the City's "refusal to exempt" their property from application of the ordinance. The City's refusal to accede to plaintiff's request

that the ordinance include, on its face, an exemption for plaintiffs' property does not constitute an "application" of the ordinance to plaintiffs' property. Application of the ordinance does not occur until the City rules on a request

reached no final and authoritative determination as to how the ordinance applied. Accordingly, plaintiffs' claim that the ordinance is unconstitutional as applied is not ripe for adjudication.

Plaintiffs maintain, however, that a ruling by this court that their claim is not ripe, absent an application for a special use permit, would be inconsistent with the ruling of the California Supreme Court that plaintiffs need not seek such a permit prior to converting the apartment complex to a stock cooperative. *See Shelter Creek*, 34 Cal.3d at 736 n. 1, 669 P.2d at 949 n. 1, 195 Cal.Rptr. at 362 n. 1. This argument erroneously assumes that ripeness requirements under federal law must be consonant with state law permit requirements.

■ The California court held that because Ordinance No. 1805 cannot be applied to their property, plaintiffs need not seek or obtain a special use permit in order to convert their apartment complex to a stock cooperative. That holding was based on state law. As a matter of federal law, however, a federal court cannot entertain a challenge to application of a land use ordinance absent a final and authoritative decision by the appropriate administrative body. This federal requirement of ripeness cannot be altered or abrogated by a decision of a state court construing its own laws.

## IV. CONCLUSION

This constitutional challenge to the application of Ordinance No. 1805 to the Shelter Creek property is not ripe for judicial adjudication. Accordingly, we VACATE the district court's judgment on the merits and REMAND with directions that the claim be dismissed.[4]

for a variance or a special use permit under the ordinance, an event that never occurred in this case.

4. *See Kinzli v. City of Santa Cruz,* 818 F.2d 1449, 1457 (9th Cir.1987) (vacating district court's de-

cisions on merits where landowners' constitutional challenge to application of land use ordinance was not ripe for adjudication) (landowners' claims "should have been dismissed for lack of jurisdiction").