945 F.2d 409
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIVE VILLAGE OF TANANA, Plaintiff,
and
Tanana Chiefs Conference, Inc., Plaintiff-Appellant,
v.
Steve COWPER, in his official capacity as the Governor of
the State of Alaska, Douglas Baily, in his official capacity
as the Attorney General of the State of Alaska, Don W.
Collinsworth, in his official capacity as the Commissioner
of the Alaska State Department of Fish and Game, State of
Alaska, Defendants-Appellees.
 No. 90-35454.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 19, 1991.
Decided Sept. 25, 1991.
 
 Before TANG, REINHARDT and RYMER, Circuit Judges:
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 The Tanana Chiefs brought this lawsuit to challenge on first amendment grounds the Alaska hunting regulations restricting the killing of moose out of season. The Tanana Chiefs Conference alleged that Alaska's hunting regulations violate its members' rights to the free exercise of religion. The Tanana Chiefs also sought a declaratory judgment that the Alaska hunting regulations do not extend into Indian country. Finally, the Tanana Chiefs sought to annul the Alaska hunting regulations as void for vagueness. The district court granted the defendants' motion for summary judgment. The Tanana Chiefs appeal. We affirm.
 
 DISCUSSION
 1. Free Exercise Clause
 
 3
 a. Standing
 
 
 4
 While the parties do not contest standing on appeal, we must address it sua sponte if it is questionable because standing affects this court's subject matter jurisdiction. City of S. Lake Tahoe v. California Tahoe Regional Planning Agency, 625 F.2d 231, 233 (9th Cir.), cert. denied, 449 U.S. 1039 (1980). The Tanana Chiefs may have standing in this case under the doctrine of associational standing. An association has standing to bring an action when:
 
 
 5
 "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."
 
 
 6
 International Union, United Auto., Aerospace & Agricultural Implement Workers v. Brock, 477 U.S. 274, 282 (1986) (quoting Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977)).
 
 
 7
 i. Immediate or Threatened Injury
 
 
 8
 In order to meet the first prong of this test, the " 'association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.' " Hunt, 432 U.S. at 342 (quoting Warth v. Seldin, 422 U.S. 490, 511 (1975). The Tanana Chiefs Conference, Inc. is a regional Native non-profit corporation representing the 43 Alaskan Native tribes. It is unclear if the members of the Tanana Chiefs Conference are the members of the tribes, or the tribal councils. This distinction is of no import as in either case we examine the standing of the individual members of the tribes. New York State Club Ass'n v. City of New York, 487 U.S. 1, 9-10 (1988). The individual members' allegations of violations of their individual first amendment rights presents this court with an immediate injury as a result of the state's regulations. Thus, the Tanana Chiefs meet the first part of the standing test.
 
 
 9
 ii. Organization's Purpose
 
 
 10
 The Tanana Chiefs Conference was organized by the native villages to provide services to the native villages and tribes. Therefore, the interests in the religious freedoms that it seeks to protect are germane to the organization's purpose.
 
 
 11
 iii. Individual Member Participation
 
 
 12
 Where the relief sought is a declaration which will inure to the benefit of the organization's members, an organization will meet the third part of the standing test. Hunt, 432 U.S. at 343. The Tanana Chiefs Conference has requested a declaration that the Alaska Hunting regulations violate their free exercise of their members' religion. Thus, the Tanana Chiefs have met the third part of the test. We thus hold that the Tanana Chiefs Conference has met the Article III standing requirement.
 
 
 13
 b. Ripeness
 
 
 14
 Ripeness also goes to the core of our jurisdiction and must be raised sua sponte if questionable. Shelter Creek Dev. Corp. v. City of Oxnard, 838 F.2d 375, 377 (9th Cir.), cert. denied, 488 U.S. 851 (1988); Southern Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir.1990). Where the claimant has been actually threatened with arrest for engaging in activities which they claim are protected by the Constitution, their constitutional claim is sufficiently ripe for purposes of the panel's review. Steffel v. Thompson, 415 U.S. 452, 459 (1974). "In these circumstances, it is not necessary that petitioner[s] first expose [themselves] to actual arrest or prosecution to be entitled to challenge a statute that [they] claim deters the exercise of ... constitutional rights." Id.; accord, Doe v. Bolton, 410 U.S. 179, 188 (1973). Therefore, this claim is ripe. Here, two individuals have already been arrested for engaging in the hunting of moose for a memorial potlatch out of season and prosecutions against them were initiated. This is sufficient to make this controversy ripe.
 
 
 15
 c. Mootness
 
 
 16
 Article III, section 2, of the Constitution also makes mootness an element of our subject matter jurisdiction and must be raised sua sponte where it is doubtful. See, Riverhead Sav. Bank v. National Mortgage Equity Corp., 893 F.2d 1109, 1112 (9th Cir.1990). A case is moot if it has "lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." Hall v. Beals, 396 U.S. 45, 48 (1969) (per curiam). Here, the district court held that this case might be moot because the state had failed to complete the prosecution of Walter and Jim Farmer. While this case was prompted by that prosecution, this case also concerns the interests of numerous tribal members, whose alleged free exercise rights remain threatened. The threat of prosecution for the practices the Tanana Chiefs allege are constitutionally protected is real, and presents us with a present and live controversy. Therefore, this case is not moot.
 
 
 17
 d. Moose Hunting Season
 
 
 18
 Assuming, for the sake of this appeal only, that fresh moose meat is a requirement of the memorial potlatch,[1] we must inquire as to whether the regulations restrict the religion's ability to obtain fresh moose meat. The district court held that the hunting regulations did not significantly burden the memorial potlatch celebrations because the memorial potlatches could be held during the hunting season.
 
 
 19
 State regulations which are neutral on their face, may nonetheless offend the constitutional requirement for governmental neutrality if they unduly burden the free exercise of religion. Wisconsin v. Yoder, 406 U.S. 205, 220 (1972). Based on the record before us, the moose hunting season restriction is merely an inconvenience to the Athabascan religion and does not rise to the level of an undue burden on their freedom of religion. No evidence was presented that the memorial potlatches could not be performed during the hunting season. Indeed, the only evidence that was presented indicated that a memorial potlatch can be conducted at any time following one year after the death of the person to be commemorated. We hold, therefore, that on this record, there has been no showing that the Athabascan memorial potlatch ceremonies are unduly restricted by the hunting regulations.
 
 2. Indian Country
 
 20
 a. Ripeness
 
 
 21
 The Tanana Chiefs Conference argues that Alaska's fish and game laws cannot apply on Indian Country. Again we must consider whether this controversy is ripe for review as it affects our subject matter jurisdiction. Shelter Creek, 838 F.2d at 377. A threat of enforcement of a general nature is insufficient to meet the case or controversy requirements of Article III of the Constitution and the "actual controversy" requirement of the Declaratory Judgement Act, 28 U.S.C. § 2201 when there is a lack of information on the record as to the history of prosecution or non-prosecution under a law. Rincon Band of Mission Indians v. County of San Diego, 495 F.2d 1, 4, 6 (9th Cir.), cert. denied, 419 U.S. 1008 (1974). A decision in such circumstances would lack sufficient immediacy and reality. Id.
 
 
 22
 In this case, there is no evidence in the record that the moose kill which prompted this lawsuit occurred in Indian Country or on an Indian Allotment. In fact, there is no evidence in the record that any fish and game laws have been enforced in Indian Country. The only information in the record which establishes that Alaska seeks to enforce its fish and game laws in Indian Country is this general statement in its brief:
 
 
 23
 The State stated below and repeats for the sake of clarity that it considers itself to have criminal jurisdiction on Native allotments and will enforce its laws there.
 
 
 24
 This is the same general threat of enforcement which precluded examination of an ordinance in the Rincon case. Thus, we decline to decide this issue as it is not yet ripe for review.
 
 3. Vagueness
 
 25
 The Tanana Chiefs' final argument is that the hunting regulations are unconstitutionally vague because the decision in Frank v. State, 604 P.2d 1068 (Alaska 1979), creates an exception. The Frank case sustained a free exercise challenge to the hunting laws for funeral potlatches. However, we assume for purposes of this decision, that the state court failed to rule on memorial potlatches. This exception, the Tanana Chiefs argue, makes the hunting laws unconstitutionally vague.
 
 
 26
 The void-for-vagueness doctrine holds "that the very words of statutes must be sufficiently precise to provide comprehensible notice to average citizens of the substance of the rules that bind them." United States v. Vasarajs, 908 F.2d 443, 448 (9th Cir.1990). "[W]e insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." Id. at 449.
 
 
 27
 The law in this case says quite simply no person may hunt for game out of season and no person may possess or transport any game taken out of season. Alaska Admin.Code tit. 5, §§ 92.140(b), 85.001. This prohibition is quite clear. There are no vague references suggesting that these regulations may not apply to memorial potlatches. The fact that regulations and the case law provide an exception for funeral potlatches, but no exception for memorial potlatches or any other type of potlatch does not render this statute less clear. Thus, the Tanana Chiefs argument must fail.
 
 CONCLUSION
 
 28
 The Tanana Chiefs Conference has standing to adjudicate this ripe controversy considering the violation of its members first amendment free exercise rights. However, it has not presented any evidence that the state unduly burdens the right to exercise their religious beliefs because it has not offered any proof that the memorial potlatches cannot be held during the moose hunting season. The issue of whether the fish and game regulations may apply on Indian country is not ripe for review at this time. Finally, the Alaskan statutes are not unconstitutionally vague. The decision of the district court is
 
 
 29
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The district court concluded that the free exercise rights of the Tanana Chiefs were not violated because no evidence was presented that the memorial potlatch required fresh moose meat. Appellants argue that the record presents a genuine dispute of material fact on this point. We do not address this issue as we affirm the district court on alternative grounds