TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | No. 92-708 |
| of | : | |
| | : | DECEMBER 2, 1992 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE MIKE THOMPSON, MEMBER OF THE ASSEMBLY, has requested an opinion on the following question:

1. When approving the subdivision of land subject to a Williamson Act contract, may a county require new contracts for each parcel of the subdivision?

2. May a county unilaterally impose new contract terms for the resulting parcels, including the waiver of a previous notice of nonrenewal filed for all of the property to be subdivided?

CONCLUSIONS

1. When approving the subdivision of land subject to a Williamson Act contract, a county may require, either pursuant to a term of the original contract or pursuant to a duly enacted subdivision ordinance, new contracts for each parcel of the subdivision.

2. A county may unilaterally impose new contract terms for the resulting parcels, including the waiver of a previous notice of nonrenewal filed for all of the property to be subdivided, either pursuant to a term of the original contract or pursuant to a duly enacted subdivision ordinance.

ANALYSIS

This request for our opinion requires an analysis of the relationship between the California Land Conservation Act, commonly known as the "Williamson Act" (Gov. Code, §§ 51200-51295),[1] and the Subdivision Map Act (§§ 66410-66499.37). Briefly, the Williamson Act

---

1. All section references are to the Government Code unless otherwise indicated.

permits an owner of agricultural land to enter into a contract with a county (or a city)[2/] to restrict the use of the land to agricultural purposes for a minimum period of ten years. In return, the landowner is assessed property taxes for such agricultural use despite the fact that the property, if unrestricted, would command a higher tax assessment.

Also briefly, the Subdivision Map Act governs the design and improvement of subdivisions through its various provisions and local supplementary subdivision ordinances adopted by cities and counties. It does so essentially through the approval by the local agency of parcel maps, tentative subdivision maps, and final maps of proposed subdivisions.

We are informed that a county board of supervisors has added an agricultural element to its general plan (see §§ 65300-65303) to address the premature conversion of agricultural land to non-agricultural uses. A stated policy of the agricultural element is to "establish policies that will improve the viability of agricultural land." In accordance with these policies, every Williamson Act contract executed by the county provides that the land will not be divided except in accordance with county ordinances as from time to time amended. One such county subdivision ordinance provides:

"Land subject to the provisions of a Land Conservation Agreement may not be divided for any purpose unless a new Land Conservation Agreement providing for such divisions is approved for each resulting parcel in accordance with the rules and regulations relating to agricultural agreements."

The questions presented for analysis concern whether a county, when approving the subdivision of Williamson Act contract land, may require new contracts for each resulting parcel, and if so, what would be the effect of such a requirement upon a notice of nonrenewal previously filed by the landowner. The resolution of these questions requires an examination of both the Williamson Act and the Subdivision Map Act.

1. Requiring New Contracts

The first issue to be addressed is whether a county has authority to require the execution of new Williamson Act contracts at the time Williamson Act land is subdivided. We conclude that it has both a contractual power and a police power that it may exercise in requiring new contracts.

A. Williamson Act Contracts

The Williamson Act declares "[t]hat the preservation of a maximum amount of the limited supply of agricultural land is necessary to the conservation of the state's economic resources," and accordingly the provisions of the Williamson Act are "necessary for the promotion of the general welfare and the protection of the public interest in agricultural land." (§ 51220.)

With respect to Williamson Act contracts, section 51240 provides:

"Any city or county may by contract limit the use of agricultural land for the purpose of preserving such land pursuant and subject to the conditions set forth in the contract and in this chapter. A contract may provide for restrictions, terms, and

---

2. References to "county" herein would be equally applicable to a city.

conditions, including payments and fees, more restrictive than or in addition to those required by this chapter."

Each contract must be "for an initial term of no less than 10 years." (§ 51244.) If on the anniversary date of the contract, neither the owner nor the county gives a "notice of nonrenewal," one year is automatically added to the initial term. (§§ 51244-51246.) "A contract may not be cancelled except pursuant to a request by the landowner, and as provided in" the Williamson Act. (§ 51281.) Numerous grounds for the owner to petition for cancellation are specified. (§ 51282.) Section 51254 provides for the mutual rescission of contracts:

"Notwithstanding any other provision of this chapter, the parties may upon their mutual agreement rescind a contract in order simultaneously to enter into a new contract pursuant to this chapter, which new contract would enforceably restrict the same property for an initial term at least as long as the unexpired term of the contract being so rescinded but not less that 10 years. Such action may be taken notwithstanding the prior serving of a notice of nonrenewal relative to the former contract."

Regarding the respective contractual obligations of the landowner and county, the court in *Delucchi* v. *County of Santa Cruz* (1986) 179 Cal.App.3d 814, 820, summarized:

". . . In return for agreeing to restrict the use of his land in accordance with the act, the landowner receives a reduced property tax assessment based on the value of the land for its current use as opposed to its market value. (Cal. Const., art. XIII, § 8, formerly art. XXVIII; *Sierra Club* v. *City of Hayward* (1981) 28 Cal.3d 840, 851; *Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122, 1131; *Shellenberger* v. *Board of Equalization* (1983) 147 Cal.App.3d 510, 513; *Kelsey* v. *Colwell* (1973) 30 Cal.App.3d 590, 592.) The landowner may terminate the contract by serving notice upon the local government, but is proscribed from developing the land during the balance of the contract term. (Gov. Code, § 51246.) Upon notice of nonrenewal, taxes on the property gradually return to levels for nonrestricted property. (Rev. & Tax Code, § 426.)" (Fn omitted.)

In *County of Marin* v. *Assessment Appeals Board* (1976) 64 Cal.App.3d 319, 322, the court described the preferential property tax treatment for the landowner as "[t]he bargained for consideration" given in exchange for preserving the land in its agricultural state. (See also *Sierra Club* v. *City of Hayward* (1981) 28 Cal.3d 840, 857.) Williamson Act contracts have been interpreted according to the usual rules for construing contracts in general. (See *Delucchi* v. *County of Santa Cruz, supra*, 179 Cal.App.3d 814, 821-822; *County of Marin* v. *Assessment Appeals Board, supra*, 64 Cal.App.3d 319, 324-325.)

The Legislature has granted broad authority to counties to fashion Williamson Act contract terms "more restrictive than or in addition to those" contained in the act itself. (§ 51240; see 62 Ops.Cal.Atty.Gen. 233, 241-242 (1979).) Obviously, a contract term requiring new contracts when the land is subdivided serves the primary purpose of the Williamson Act to discourage "premature and unnecessary conversion of agricultural land to urban uses." (§ 51220; see *Sierra Club* v. *City of Hayward, supra*, 28 Cal.3d 840, 851.) Counties are directed to administer the Williamson Act to accomplish not only this goal (§ 51252) but specifically to prevent subdivisions of contract lands into parcels that are not "large enough to sustain agricultural uses permitted under the contracts" (§ 51222).

We note that the Department of Conservation has been directed by the Legislature to "assist local, regional, state, and federal agencies, organizations, landowners, or any other person or entity in the interpretation of [the Williamson Act]." (§ 51206.)  The department has construed section 51240 to allow contract terms requiring new contracts for the resulting parcels created when contract lands are subdivided. "Administrative interpretation of a statute by the agency charged with its enforcement is entitled to great weight unless shown to be clearly erroneous  or unauthorized." (*American Hospital Supply Corp.* v. *State Bd. of Equalization* (1985) 169 Cal.App.3d 1088, 1092; see *Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 460.)  We believe that the department's interpretation of section 51240 is both reasonable and in furtherance of the goals of the Williamson Act.

Accordingly, we conclude that a county may exercise its power to contract, requiring new contracts for Williamson Act contract lands subdivided into parcels. (See 51 Ops.Cal.Atty.Gen. 80, 85 (1986).)  The landowner may voluntarily enter into the agreement with the restrictive terms and obtain the specified tax benefits.  If the landowner chooses instead to subdivide the property, he or she may do so by forgoing the tax benefits for maintaining the land in its agricultural state.

B.  Subdivision Map Act Ordinances

The basic thrust of the Subdivision Map Act is found in section 66411, which provides:

"Regulation and control of the design and improvement of subdivisions are vested in the legislative bodies of local agencies.  Each local agency shall, by ordinance, regulate and control the initial design and improvement of . . . subdivisions for which this division requires a tentative and final or parcel map. . . . Each local agency may by ordinance regulate and control other subdivisions, provided that the regulations are not more restrictive that the regulations for those subdivisions for which a tentative and final or parcel map are required by this division . . . ."

After citing section 66411 and other provisions of the Subdivision Map Act, we concluded in 59 Ops.Cal.Atty.Gen 129, 133 (1976):

". . . Thus, it is without doubt that legislative bodies of local agencies can promulgate ordinances in compliance with the Map Act to regulate and control design and improvement of subdivisions, and in so doing, condition map approval on the satisfaction of certain conditions imposed by those ordinances in consonance with the Map Act's definitions . . . ."

With specific regard to lands subject to Williamson Act contracts, subdivision (a) of section 66474.4 states:

"The legislative body of a city or county shall deny approval of a tentative map, or a parcel map for which a tentative map was not required, if it finds that the land is subject to a contract entered into pursuant to the California Land Conservation Act of 1965 (Chapter 7 (commencing with Section 51200) of Division 1 of Title 5) and that the resulting parcels following a subdivision of that land would be too small to sustain their agricultural use. . . ."

A county, under its independent police power granted pursuant to Article XI, section 7 of the California Constitution,[3/] may regulate subdivisions. (See *Griffin Development Co.* v. *City of Oxnard* (1985) 39 Cal.3d 256, 261; *Santa Monica Pines, Ltd.* v. *Rent Control Board* (1984) 35 Cal.3d 858, 868-869; *Shelter Creek Development Corp.* v. *City of Oxnard* (1983) 34 Cal.3d 733, 742; *Delucchi* v. *County of Santa Cruz, supra*, 179 Cal.App.3d 814, 823-826; *Benny* v. *City of Alameda* (1980) 105 Cal.App.3d 1006, 1011.) As observed by the court in *McMullan* v. *Santa Monica Rent Control Bd.* (1985) 168 Cal.App.3d 960, 962-963:

"To the extent it may validly be claimed the Subdivision Map Act preempts the field of subdivision regulation [citation], it is yet the case it does not operate to defeat the legitimate exercise of the police power of a municipality in connection with matters outside the scope of the act and which are not calculated to circumvent its express provisions. Stated another way, while the act may be the final word respecting the subdivision process, it does not purport and may not be understood to be preemptive of all land use regulation."

As for subdivision ordinances adopted under the aegis of the Subdivision Map Act, in *Soderling* v. *City of Santa Monica* (1983) 142 Cal.App.3d 501, 506, the court explained:

"It is well established that the power to adopt supplementary ordinances or regulations pursuant to the Subdivision Map Act (Gov. Code, §§ 66410-66499.37) may be implied, where not expressly granted, as long as the provision at issue reasonably relates to the purposes of the act. [Citations.] Moreover, the power need not be exercised by the specific enactment of an ordinance or promulgation of a regulation. `Where . . . no specific restriction or limitation on the city's power is contained in the charter and none *forbidding* the particular conditions is included either in the Subdivision Map or the city ordinances, it is proper to conclude that conditions are lawful which are not inconsistent with the map act and the ordinances and are reasonably required . . . .' [Citation.]"

In 54 Ops.Cal.Atty.Gen. 90 (1971), we concluded that a county could refuse to allow a 1,200-acre farm under a Williamson Act contract to be divided into 20-acre parcels if the division would result "in changing the use of the land from agricultural to other uses not within the purpose of the California Land Conservation Act." The conclusion reached in our 1971 opinion was reaffirmed in 62 Ops.Cal.Atty.Gen. 233, 241-242 (1979). In the latter opinion, we pointed out the additional subdivision requirement of "an affirmative finding by the county of consistency between the map and the county's general or specific plan." (Id., at p. 244; see § 66473.5; 59 Ops.Cal.Atty.Gen. 129, 130-133 (1976); 58 Ops.Cal.Atty.Gen. 21, 27-29 (1975).)

In the example we have been given, a county subdivision ordinance is implementing a policy of the county's general plan to promote the conservation of agricultural land. The ordinance requires new Williamson Act contracts for all parcels created by a subdivision during the time the landowner is receiving a tax benefit for maintaining the agricultural use of the land. The ordinance is authorized by the Subdivision Map Act to regulate and control the design and improvement of subdivisions in conformity with the county's general plan. (See §§ 66411, 66473, 66473.5; *Soderling* v. *City of Santa Monica, supra*, 142 Cal.App.3d 501, 506-509; 59 Ops.Cal.Atty.Gen. 129, 132-133 (1976).)

---

3. "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinance and regulations not in conflict with general laws."

In summary, then, a landowner's right to subdivide property is subject to reasonable conditions that serve a legitimate public purpose. (See *Nollan* v. *California Coastal Com.* (1987) 483 U.S. 825, 835-837; *Griffin Development Co.* v. *City of Oxnard, supra*, 39 Cal.3d 256, 261; *Associated Homebuilders etc. Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633, 644; *Trent Meredith, Inc.* v. *City of Oxnard* (1981) 114 Cal.App.3d 317, 328; *cf. Russ Bdg. Partnership* v. *City and County of San Francisco* (1987) 199 Cal.App.3d 1496, 1504.) Under the Williamson Act, the preservation of agricultural land is of prime importance to the promotion of the general welfare of the citizens of the state. This purpose presents a classic case for the exercise of the police power, whether at the state or local level.

We conclude that a county may legislate with respect to the subdivision of land which is restricted by a Williamson Act contract. Such legislation may require that the property owner, as a condition to the approval of the subdivision of the property, agree to a mutual rescission of the existing contract and the simultaneous execution of new contracts for the resulting parcels. Of course, such contracts may not conflict with any specific provision of the Subdivision Map Act.

2. Effect of a Notice of Nonrenewal

The second question presented concerns a notice of nonrenewal previously filed by a landowner for property now proposed to be subdivided. We conclude that the notice of nonrenewal would no longer be valid if the county duly exercises its contract power or police power to require new contracts for each subdivision parcel.

Section 51243 is the key statute requiring our analysis. It provides:

"Every contract shall:

"(a) Provide for the exclusion of uses other than agricultural, and other than those compatible with agricultural uses, for the duration of the contract.

"(b) Shall be binding upon, and inure to the benefit of, all successors in interest of the owner. Whenever land under a contract is divided, the owner of any parcel may exercise, independent of any other owner of a portion of the divided land, any of the rights of the owner in the original contract, including the right to give notice of nonrenewal and to petition for cancellation. The effect of any such action by the owner of a parcel created by the division of land under contract shall not be imputed to the owners of the remaining parcels of the divided land. On the annexation by a city of any land under contract with a county, the city shall succeed to all rights, duties and powers of the county under the contract. . . ."

Accordingly, a Williamson Act contract is to "inure to the benefit of, all successors in interest of the owner," with the former able to exercise "any of the rights of the owner in the original contract" "[w]henever land under a contract is divided." If, for example, in 1987 a landowner filed a notice of nonrenewal and now wishes to subdivide in 1992, but the county requires new 10-year contracts for the resulting parcels, what is the effect of the previously filed notice of nonrenewal?

First, in the example considered in response to the first question, the original contract executed by the landowner and county had a provision requiring, in effect, new 10-year contracts for any resulting subdivision parcels. Such a provision would be, as we have seen, authorized by section 51240. Hence, the original landowner would be subject to such a requirement, and pursuant

to section 51243 any successors in interest would have no greater rights than had the original landowner.

In such circumstances, the "new" 10-year periods for each subdivision parcel would be part of the terms of the original contract. The landowner may initially enter into such contractual terms and receive the resulting tax benefits, or he or she may choose not to so contract with the county. In short, whether or not an owner must waive the benefits of a notice of nonrenewal is a proper matter for negotiation at the time the original contract is executed. Section 51243 has no application when the original contract contains a nonrenewal waiver or any other "new" term for resulting subdivision parcels.

What is the result when the 10-year terms for new subdivided parcels are required by a subdivision ordinance rather than by the language of the original contract? While the Williamson Act does not expressly prohibit the subdivision of contract lands (see § 51222; 54 Ops.Cal.Atty.Gen. 90, 92 (1971)), neither does it grant an absolute right to subdivide. The subdivision of land which is subject to a Williamson Act contract would generally not serve the primary goal of the Williamson Act to promote the conservation of agricultural lands. (See § 51222; 62 Ops.Cal.Atty.Gen. 233, 241-242 (1979).)

The Subdivision Map Act and local ordinances implementing it, not section 51243, control the subdivision of land in California. Just as section 51243 does not override the terms of the original contract negotiated by the landowner, it does not override the Subdivision Map Act. It uses the word "whenever" in the phrase "[w]henever land under a contract is divided . . . ." No express or implied authority is given by such language to subdivide property in contravention of the Subdivision Map Act or implementing local ordinances.[4/]

We are directed to interpret statutes in context, giving effect to each provision relevant to a particular subject. (*Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736, 744; *California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844.) "[S]tatutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

A landowner need not agree to a 10-year contract term for each resulting parcel of a subdivision. Instead, the landowner may wait until the original nonrenewal period is completed, and he or she is no longer receiving property tax benefits. In short, if the landowner wishes to subdivide Williamson Act contract lands, the choice is to comply with duly enacted subdivision ordinances or wait until the nonrenewal period has run.

Our construction of section 51243 is consistent with that of the Department of Conservation. As already observed, an "[a]dministrative interpretation of a statute by the agency charged with its enforcement is entitled to great weight unless shown to be clearly erroneous or unauthorized." (*American Hospital Supply Corp.* v. *State Bd. of Equalization, supra,* 169 Cal.App.3d 1088, 1092.)

In answer to the second question, therefore, we conclude that in approving the subdivision of Williamson Act contract lands, a county may unilaterally impose new contract terms

---

4. We have previously examined the purposes of section 51243 and have concluded that "without it the contracting owner could `sell to a developer at a high price after reaping the tax benefits.'" (51 Ops.Cal.Atty.Gen. 80, 82 (1968).)

for the resulting parcels, including the waiver of a previous notice of nonrenewal filed for all of the property, either pursuant to a term of the original contract or pursuant to a duly enacted subdivision ordinance.

* * * * *